CASE 23—PETITION EQUITY—MAY 15.

# Simon v. Wildt, &c.

84  157
f 104 865.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE CHANCELLOR SHOULD NOT DECREE THE SPECIFIC EXECUTION OF A CONTRACT if the legal remedy be adequate, or if, under all the circumstances, it would not be equitable and just to do so.

In this action upon a note the defendant set up a written contract whereby the plaintiff, in consideration of the defendant's agreement to board and lodge him during life, agreed to give the defendant the note sued on at his, the plaintiff's death, the defendant agreeing to pay the annual interest. The contract further provided, that if defendant should fail to perform his part of the contract, he should pay the plaintiff the money due him, which constituted the greater

part of the plaintiff's estate, and the plaintiff should pay him board. at a fixed rate. The defendant's wife, to whom plaintiff was much attached, has died, and the parties have become unfriendly.

*Held*—That, under the circumstances, it would be unjust to specifically enforce the contract, especially as defendant has provided in the contract for his full indemnity by the payment of board, and the contract is devoid of mutuality as to specific performance.

2. WHETHER A PAPER IS A DEED OR A WILL IS A QUESTION OF INTENTION. If it appears that the maker did not intend any interest whatever to vest before his death, then the law regards the instrument as a will.

Whether the writing sought to be enforced in this case as a contract is a deed or a will is not determined.

3. TITLE TO NOTES SUED ON.—The plaintiff being the beneficial owner of the notes sued on when the suit was brought, and the legal title holder subsequently appearing and admitting the plaintiff's ownership and disclaiming any in himself, the defense that the plaintiff was not the owner of the notes was unsustained.

BADGER & EVERBACH FOR APPELLANT.

1. When an instrument shows an intention to pass an estate or interest in property to take effect after the death of the maker, it is a will, and revocable at any time before his death. (Johnson v. Gancy, 20 Ga., 707; Steward v. Steward, 5 Conn., 317; Pitkin v. Pitkin, 7 Conn., 315; Meek's Appeal, 97 Pa. St., 313; Williams v. Tolbert, 66 Ga., 127; Sperker v. Balster, 66 Ga., 317; Kimbrenner v. Kimbrenner, 35 Ala., 628; Jordan v. Jordan, 65 Ala., 301; Gillham v. Mustin, 42 Ala., 365; Adams v. Broughton, 13 Ala., 731; Armstrong v. Armstrong, 4 Baxt., 357; Wall v. Wall, 30 Miss., 91; Leaver v. Gauss, 17 Ia.; 31 Am. Dec., 583; 52 Pa. St., 338.)

2. The court will not enforce a contract specifically which one of the parties thereto may revoke at any moment. (Gas Consumers' Co. v. Harrison, 17 Beav., 294; Jones v. Jones, 12 Ves., 188; South Wales R. R. Co. v. Wythes, 1 K. and J., 186; Flint v. Brandon, 8 Ves., 159; Wheeler v. Trotter, 3 Sev., 174; Sturge v. Midland Railway Co., Weekly Rep., 1857, 1858, 233 V. C.; Andrews v. Andrews, 28 Ala., 432; Booth v. Pollard, 4 Y. and C. Ex., 61; Pollard v. Clayton, 1 K. and J., 462.)

3. The court will not specifically enforce a contract where the party has a remedy at law. (9 Dana, 337; 3 J. J. Mar., 230; 1 Mon., 90; Hard., 551; 1 Call, 533; 2 Johns. Ch'y, 431.)

4. It rests wholly in the discretion of the court as to whether it will grant the specific performance prayed for. (6 J. J. Mar., 16; 10 B. Mon., 45; 7 Bush, 413.)

Simon v. Wildt, &c.

M. A. & D. A. SACHS FOR APPELLEE, AUGUST WILDT, SR.

1. It does not appear that plaintiff was the beneficial owner of the notes sued on at the commencement of the action; and the appearance of the legal title holder after the commencement of the action, and his disclaimer of any interest, does not mend the matter so far as concerns the plaintiff's right to sue at the beginning of the action.
2. The note sued on being indorsed in blank, the transfer should have been written out before judgment was asked.  (Gaar v. Louisville Banking Co., 11 Bush, 184.)
3. The plaintiff was not in a position to sue, the record title of the note and lien being in his assignor.  (Summers v. Kilgus, 14 Bush, 449; Act March 18, 1876, Session Acts 1876, volume 1, page 87.)
4. The writing relied on by appellee is not a will but a binding contract, and appellee having performed his part of the contract, it should be enforced against appellant.
5. The charge of fraud is not sustained by the proof.

THOMAS JOYES, GUARDIAN *ad litem* FOR INFANT APPELLEES.

The writing relied on by appellees is a binding contract which can not be disregarded by appellant, the appellee, August Wildt, Sr., having faithfully performed his part of the contract.  The evidence shows that it is appellant, and not Wildt, who has broken the contract.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, August Simon, brought this action upon two notes executed by the appellee, August Wildt, one of them being a lien note for the purchase money of land, dated in March, 1872, and for one thousand four hundred and twenty-five dollars, and the other a mortgage lien note against the same land for one thousand and thirty dollars, dated in October, 1873.

The first defense interposed was that the appellant was not the owner of them.  It appears that he, on October 25, 1880, assigned them to the appellee, George Feilbach, and the transfer was of record, as well as shown upon the notes.  The one for one thousand and thirty dollars was re-assigned to the

appellant by an indorsement upon it in June, 1883, but the record assignment back to him of both notes was not entered until March 5, 1884, and this action was brought on October 25, 1883.

The appellant, however, was the beneficial owner of them all the time. They were assigned to Feilbach simply to hold for him. The assignee was the mere legal title *holder*, without interest; and as he, being made a defendant, admitted the appellant's ownership, and disclaimed any in himself, this defense was unsustained.

The second one presented was that the appellant had entered into the following contract, the specific execution of which is asked, and that he was thereby estopped from enforcing the collection of the notes; that he had thereby agreed that the appellee, August Wildt, might retain the principal of the debts by the payment of interest, and rendition of certain services as therein stipulated; and that as he had in part received the benefit thereof, equity would not permit him to violate the alleged contract so long as the appellee was fully complying with it:

"This indenture and will, made this first day of July, 1882, by and between August Simon of the first part, and August Wildt and George Fielbach of the second part, witnesseth: That for and in consideration of the matters hereinafter stated, said second parties agree and bind themselves to furnish to first party boarding and lodging for and during the life of said first party. Said first party shall have the privilege to board and lodge by either one of said second parties for a shorter or longer period,

and to change from one to the other at pleasure, and neither one of second parties shall make the other party account for such longer period of boarding and lodging.

"Said August Wildt agrees to pay to first party the annual interest due on the principal—the interest amounting to one hundred and fifty-eight dollars annually—which shall be paid semi-annually, in installments of seventy-nine dollars each, until the death of first party.

"Said George Feilbach agrees to pay to first party the annual interest of sixty dollars during the lifetime of said first party. Said second parties also agree to pay the sick and funeral expenses of the first party in equal parts, if the funds received from the lodges is insufficient to pay the same in full.

"In order to obtain the proper attention in sickness, said first party reserves the right to go to either one of said second parties for boarding, lodging and nursing.

"In consideration of the foregoing agreement, and the fulfillment thereof until my death, I, August Simon, party of the first part, declare said August Wildt and George Fielbach as my sole and only heirs, and for that purpose I give and *bequeath* to said second parties all my real and personal estate of which I may be possessed *at my death*, to have and to hold the same to said second parties, share and share alike.

"My estate being in the hands of said second parties in nearly equal parts, except the sum of four hundred and fifty dollars, which said August

Wildt holds over and above the amount held by said George Feilbach: now, to equalize the second parties, said August Wildt shall, and he hereby agrees to pay to said George Fielbach the sum of two hundred and twenty-five dollars at my death. Upon the payment of said sum, said George Fielbach or his heirs, or the executors, shall, after my death, release the lien note and mortgage retained on said A. Wildt's farm, and enter the proper release on the proper records of the county clerk's office, and deliver to said Wildt all the documents relating thereto.

"Now, if the said second parties shall fail to perform all of the conditions as herein set forth, and fail to pay the interest promptly, or refuse the proper boarding, lodging and attention, then this contract and will shall be revoked and of no force and effect, and the money due by said second parties to said first party shall be paid to him; and in that event said second parties shall have and receive from said first party the sum of three dollars for each week's boarding and lodging, and shall have no further claims on said first party.

"In testimony whereof, witness the signatures of said August Simon as party of the first part, and August Wildt and George Fielbach as parties of the second part. This first day of July, 1882, at Louisville, Kentucky.

"Witnesses:                AUGUST SIMON,
  "GEO. L. EVERBACH,       GEO. FIELBACH,
  "A. J. DOMECK,           AUGUST WILDT."

This writing was duly acknowledged by all the parties, but was never recorded.

It is contended upon the one side that it evidences a contract *inter partes*, and that by it Wildt and Fielbach acquired a vested interest in the estate of Simon, the enjoyment of it being postponed by the requirement to pay interest until his death. While, upon the other, it is urged that the instrument was executed merely as a will, to be effective at Simon's death; that it is testamentary in its character, giving to Fielbach and Wildt whatever property he might own at his death only; that they were only to take *in futuro*, the power to revoke—the *locus penitentiæ*—resting with Simon.

No particular form for a will is required. If an instrument be in form a deed, yet if it appears that the maker did· not intend it to be operative until after his death, then it will be held to be a will.

Whether it is the one or the other, is a question of intention. If no conclusive effect can be given to the paper until the death of the maker—if it appear that the maker did not intend any interest whatever to vest before his death, then the law regards the instrument as testamentary.

It is, however, unnecessary in this instance to determine whether the writing is a contract by which an interest vested in the appellee, or whether it is a mere testamentary paper which the appellant had the power to revoke at pleasure; because, even accepting the appellee's view of it, it is not of a character to be specifically enforced, and should not be under the existing circumstances. It appears that, at the date of its execution, the appellant, Simon, was about seventy years old, while the other parties to it were

much younger. They were in possession of the old man's entire estate, it being in the form of debts on them. All the parties were then friendly. The then wife of the appellee, Wildt, was a woman to whom Simon was much attached, and whom he had long known. Shortly after the execution of the paper she was taken sick and became unable to attend to the household matters, and died the following year.

The appellee, Wildt, has now another wife, who is a stranger to Simon. After the execution of the writing he made his home at Wildt's, spending, however, from one to three days in each week at Fielbach's, until the following April, when he left his house and has never returned. There is testimony tending to show that he was, while there, not furnished with a suitable room or proper food, or cared for in a reasonably suitable manner. The evidence is, however, conflicting in this respect, and it would be difficult, perhaps, to determine its preponderance, if this were necessary. It is clearly shown, however, that, during the time, the old man and Wildt quarreled, and became unfriendly, and are yet so.

There is evidence tending to show that the appellee said to the appellant that he would not pay him any more interest, and that he not only threatened him with the loss of his property and that he would keep him in litigation until his death, but with physical injury. Whether all of this be true or not, it is quite evident that friendship, trust and confidence between the two men are now at an end. Whether the belief of the appellant be well-founded or not, yet it is evident that he is fearful of injury

at the hands of the appellee, if he should make his home with him. He says that he would not do so for all his property.

The situation of the parties has changed by the death of the wife of the appellee, Wildt; and the appellee, Fielbach, says that the writing was executed as a will, and he now disavows it.

A court of equity will not decree the specific execution of even every fair contract. If the legal remedy be adequate, it will not interfere. A specific execution *in equity* is not always a matter of absolute right with a party, but of sound discretion in the Chancellor.

He should only decree it if, under all the circumstances, it would be equitable and just. It is manifest that this old man will now, in the evening of his life, and when in the natural course of things he is near its night, never be contented to live at the home of the appellee, Wildt. If the writing be, therefore, specifically enforced, the latter will get the property and the former be without a home. Under these circumstances, and more especially as the appellee has provided in the writing for his full indemnity by the payment to him of three dollars for each week that Simon might live with him in case the arrangement should not be carried out, and he can therefore be made whole, the Chancellor should delight to find a way to do equity by refusing to enforce it.

Not only does the changed condition of the parties, by reason of the wife's death, afford an opportunity to do so, but the writing itself authorizes it.

It is devoid of mutuality as to specific performance. Suppose Wildt and Fielbach had become insolvent and unable to carry out the arrangement; or suppose Wildt had refused to do so, would it have been possible to have enforced it by a decree in favor of the appellant for a specific performance? Such action would be nugatory and ineffectual; and under such circumstances, and especially in view of those attending this case, a court of equity should not, in the exercise of a discretionary power, lend its aid to what must result in unhappiness and injustice.

The judgment is reversed, with directions to render one in accordance with the prayer of the petition, allowing credit, however, to the appellee, Wildt, for the seventy-eight dollars for the board of the appellant while he remained at his house, and also for any usury, if any has been paid upon the notes sued on; and for further proceedings in conformity to this opinion.