BALL-THRASH & CO. v. A. H. McCORMICK.

(Filed 28 May, 1913.)

1. Judgments—Nonsuit—Evidence, How Considered.

The notes sued on in this action were indorsed to a bank, and there being evidence that the plaintiff had taken them up from the bank before the commencement of the action thereon, and also evidence *contra*, and plaintiff's appeal being from a judgment of nonsuit, it will be assumed that the plaintiff's evidence on that question is true.

2. Evidence—Book Entries—Nonsuit.

Book entries are generally incompetent except for the purpose of refreshing the memory of the one who made them; and where the appeal is from a judgment of nonsuit, and the entries are offered by the defendant with evidence *per contra* to disprove the transfer of a note before suit was brought, they become immaterial under the rule that, in such cases, the evidence is to be viewed in the light most favorable to the plaintiff.

3. Judgments—Nonsuit—Erroneous in Part—Practice.

.Where a judgment of nonsuit has been entered in a suit to recover upon a certain note, also involving the question of a lien, it becomes unnecessary to consider the plaintiff's right to the lien when it appears that there was error committed in allowing the judgment of nonsuit regarding the recovery upon the debt.

4. Actions—Notes—Pledgor—Parties.

A holder of a note, who has deposited it at a bank as collateral security to his own note given for borrowed money, may sue and recover from the maker of the collateral note, if he pays his debt to the bank before the trial or judgment rendered, takes up the collateral note, and produces it at the trial so that it may be canceled for the protection of his debtor, without making the bank a party to the action.

5. Same—Judgments—Payments Into Court — Practice — Cancellation.

Where a holder of a note has pledged it as collateral to a note given by him for borrowed money, he still has at least a distinct beneficial or equitable interest in the note pledged, and is a real party in interest (Revisal, sec. 400), and may sue thereon without making the pledgee a party, if he produces the note in court, so that a judgment may be so framed as to protect the rights of his debtor, if he pays the judgment; and for the protection of all the parties, the court should order the note in the hand of the plaintiff to be deposited with the clerk for cancellation upon its payment.

6. Parties, Defect of—Objections and Exceptions—Practice—Nonsuit.

Objection in a suit upon a note pledged by the payee as collateral, that the pledgee was a necessary party to the action, must be taken by demurrer when the defect of parties is apparent upon the face of the pleadings; and when not thus apparent, it must be taken by answer; and a judgment of nonsuit based upon defect of parties is erroneously granted.

APPEAL by plaintiff from *Bragaw, J.,* at January Term, 1913, of BUNCOMBE.

Action upon promissory notes. The evidence tended to show that plaintiffs, at the request of defendants, installed a heating plant in their residence for the price of $684. When the work was completed, 10 January, 1911, the defendant A. H. McCormick gave to plaintiffs his three promissory notes, each in the sum of $288, and due, respectively, thirty, sixty, and ninety days after their date. Plaintiffs indorsed the notes for value to the American National Bank of Asheville, N. C., the bank discounting the same 11 January, 1911, and afterwards the first note was paid and $50 paid on the other two notes in December, 1911. The defendants, A. H. McCormick and wife, having refused to pay the other two notes, plaintiffs were notified by the bank that they would be expected to take care of them, and thereupon plaintiffs gave to the bank their notes for the full amount of the balance due, and the two notes of defendants to the plaintiffs were deposited with the bank as collateral security. The evidence was conflicting as to when this was done, whether in 1911, before this action was commenced, or in

BALL-THRASH *v.* McCORMICK.

February, 1912, after it was commenced, the summons having been issued and served on 10 January, 1912. There was much evidence taken as to the quality of the heating plant, but, in the view we take of the case, it is not necessary that it should be stated here. The court, at the close of the evidence, having intimated that plaintiffs could not recover, they submitted to a nonsuit and appealed.

*Lee & Ford for plaintiffs.*
*James H. Merrimon for defendants.*

WALKER, J., after stating the case: As the evidence was conflicting upon the question whether the two unpaid notes were taken up by plaintiffs in 1911 or in February, 1912, after this suit was brought, we must assume, in favor of plaintiffs, that it was during the former year, as the evidence must be considered in the best light for them, drawing all reasonable inferences therefrom necessary to sustain their case, and rejecting the defendant's testimony, which is adverse to the plaintiffs. *Brittain v. Westhall,* 135 N. C., 492; *Freeman v. Brown,* 151 N. C., 111; *Deppe v. R. R.,* 152 N. C., 79; *Boddie v. Bond,* 154 N. C., 359. We do not think the learned judge could have rested his opinion upon the testimony of the defendant's witness, as to the entries in the bank books, as he did not make the entries, and the clerk, who did make them, was then in the bank and perfectly accessible as a witness. *Justice Reade* said in *Sloan v. McDowell,* 75 N. C., 29: "The entries of a merchant's clerk are not evidence against a third person. It would be very dangerous if they were. They are not under oath and are not subject to examination. The clerk himself must be produced. If his memory be at fault, it may be that he can refresh it by his entries—that is all." But we need not pass upon the competency of this testimony, for the court, as we have seen, could not force a nonsuit of the plaintiffs upon the defendant's evidence, even if it was competent. *Boddie v. Bond, supra.*

The question then is, and we presume this is the one the judge decided, Can the plaintiffs as pledgors of the notes to the bank, as collateral security, maintain this action without

the presence of the bank as a party? We must premise that it appears from the evidence that the note of plaintiffs to the bank was paid and the collaterals taken up before the trial of this case, that is, in November, 1912, the trial having occurred at January Term, 1913. It was not denied that plaintiffs had paid the notes and were the legal and equitable owners thereof at the time of the trial, and one of defendant's witnesses testified that they were paid in November, 1912.

We need not consider the question as to the validity of the lien, as the plaintiffs were, at least, entitled to a judgment for the debt, if entitled to recover at all, and the nonsuit deprived them of this right. Two issues were submitted: one as to the debt, and the other as to the lien, and plaintiffs must have failed in their proof as to both before we can hold that the opinion of the judge was correct and the nonsuit proper.

The bald question, therefore, is, Can a pledgor, who has deposited notes with a bank as collateral, sue and recover upon the same, if he pays his debt, takes up the collateral notes and produces them at the trial, so that they can be canceled for the protection of the debtor? We will answer this question in the affirmative, as we think it is in accordance with principle and authority.

First, let us consider the nature of a pledge. It has been well defined in the leading case of *Doak v. Bank,* 28 N. C., 309, with reference to a transaction very much like the one presented in this case. "A mortgage of personal property in law differs from a pledge; the former is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in a mortgage of lands; the latter, a pledge, only passes the possession, or at most is a special property in the pledge, with the right of retainer, until the debt is paid. A mortgage is a pledge and more, for it is an absolute pledge, to become an absolute interest, if not redeemed in a certain time. A pledge is a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation, to be a lien upon it. *Jones v. Smith,* 2 Ves. Jun., 378; 4 Kent's Com., 138 (3 Ed.); 2 Story's Eq., 227. Gener-

ally speaking, a bill in equity to redeem will not lie in behalf
of a pledgor or his representatives, as his remedy is at law,
upon a tender of the money. 2 Story's Eq., 298; 1 Ves., 298.
We see that there is a very marked difference between a mort-
gage and a pledge of personal property." The pledgor, there-
fore, has a distinct interest in the thing he has pledged, and
having it, there is no reason why he should not have a remedy
in the court for its protection, for when there is a right, there
is said to be always a remedy. It may be replied that if he is
allowed to sue and recover, the debtor may be subjected to a
double payment; but not at all, for reason tells us, and the
cases show, that the court will so shape the judgment as to pro-
tect both the debtor and the pledgor, and this can the more
easily be done under our reformed procedure. There are three
ways by which the debtor and the pledgor can be protected:
first, by making the pledgor a party plaintiff, if he is willing,
or if not, then a party defendant; second, by providing in the
judgment that the money collected under the process to enforce
the judgment shall first be applied to the discharge of the debt
due the pledgor, and, third, by the pledgor redeeming his pledge
before the trial and judgment, as was done in this case. It will
not do to answer that the pledgee was not made a party in this
case, for that would be only an objection based upon a defect
of parties, which cannot be taken by a nonsuit, but only by
demurrer or answer, and if the defect appears, the court will
order the proper party to be brought in by process. This was
expressly held to be the result of the reformed procedure in
*Carpenter v. Miles,* 56 Ky., 598, a case resembling this one in
its facts. There the Court said: "A defect of parties, appar-
ent upon the face of the petition, is cause for demurrer; and
when not thus apparent, is an objection to be taken in answer.
(Civil Code, sec. 123.) An answer presenting such objection
may be regarded as a dilatory plea; not, however, resulting,
even when sustained by proof, in a dismissal or abatement of
the action, but furnishing a ground for an order of court re-
quiring the additional parties to be made on pain of dismissal
without prejudice." It appears that the plaintiff had retained
a valuable interest, as pledgor, in the collateral notes, and was

a "real party in interest," within the meaning of Revisal, sec. 400, and had at least an equitable or beneficial interest, if not the legal title, and such an interest may form the basis of an action to recover the property in which it is claimed. *Murray v. Blackledge,* 71 N. C., 492; *Farmer v. Daniel,* 82 N. C., 152; *Condry v. Cheshire,* 88 N. C., 375; *Taylor. v. Eatman,* 92 N. C., 601, and other cases cited in Pell's notes to Revisal, sec. 400.

But it has been expressly held that the pledgor may sue for the property before paying the debt. The plaintiff and pledgor, in *Wells v. Wells,* 53 Vermont, 1, brought a suit against defendant, pledgee, for equitable relief. The bill was dismissed because there was an adequate remedy at law by action for the property pledged, the Court saying: "And here it is to be remarked, that the fact that the note and mortgage were held by the defendants as collateral did not stand in the way of the orators proceeding, either by suit at law on the note or by foreclosure on the mortgage, if they deemed it for their interest to have the note or the mortgage, or both, enforced earlier than the defendants saw fit to proceed in that behalf. See Am. Law Review, Oct., 1880, p. 693. The court would see to it that the rights and interests of the pledgee were protected in reference to the collateral, at the same time that the pledgor was acting in regard to his own existing reversionary interest in the pledge, by the proceeding to enforce it, as against the debtor in the pledge."

The writer of the article in the American Law Review, referred to in that case, states the law to be that the pledgor has an interest in the thing deposited in pledge, and is not restricted to the remedy of tender or repayment, and the pledgee will be protected in his rights by an order that he shall be first paid out of the fund derived from the sale of the property pledged or its collection, if a note. So it was held in *Fisher v. Bradford,* 7 Me., 28, that the pledgor of a note might recover against his debtor, the maker, when he had sued upon it and had paid his debt to the pledgee before the judgment was entered. The case is directly in point, and the syllabus, which fairly states the point decided, reads as follows: "The payee of a negoti-

able promissory note, having indorsed it in blank and deliv-
ered it in pledge to another, as collateral security for his own
debt, has still the right to negotiate it to a third person, who
may maintain an action upon it in his own name as indorsee,
the lien of the pledgee being discharged before judgment."
*City Elec. Ry. Co. v. Bank,* 65 Ark., 543, is a strong case
against the action of the court in the case at bar, and there it
is said: "Counsel insist that the receiver of the bank should
not to be allowed to recover in this action on certain notes em-
braced in the decree, because these notes at the commencement
of the suit were, as the receiver admits, in the hands of a St.
Louis bank which claimed to hold them as collateral security
for a debt due the latter bank. It seems that, after the suit
was commenced, the St. Louis bank and the receiver reached
an agreement by which the notes were returned to the receiver,
and the latter filed them in court for cancellation when the
decree herein was taken. This defense, it must be agreed, is
extremely technical, so much so that counsel seem to concede
that, if all the parties were solvent, this plea would hardly
merit attention, but the apology offered for the interposition
of this defense is that the insolvency of the corporation de-
stroyed the right to make a transfer of claims to be used as a
set-off. Since we have determined, however, that the street
car company is entitled to no affirmative relief against the
receiver, it has nothing to lose on this score."

What should have been done here for the protection of all
parties was to require the notes in the hands of the plaintiff to
be deposited with the clerk of the court for cancellation, as is
generally done in other actions upon such securities. *O'Kelly
v. Ferguson,* 49 La. Ann., 1230, gives us the rule of the civil
law: "Until the debtor be divested from his property (if it
is the case), he remains the proprietor of the pledge, which is
in the hands of the creditor only as a deposit to secure his
privilege on it," and thus applies it: "They (pledgors) main-
tain that having placed the notes in the hands of the plaintiff,
they were themselves either powerless to take out remedial
process against their lessees, or that it was not their duty to
do so. The fact that the defendant transferred the notes to

the plaintiff as collateral did not, in our opinion, withdraw from them the power of protecting their interests by proceedings against the makers of the notes. Notwithstanding the pledge, they were still owners of the notes. . . . We see no obstacle in the way of the lessor's (pledgor's) having recourse directly to conservatory proceedings to protect his interests. He could legally make all the allegations necessary to that end and procure the necessary proof on the trial. It would not be essentially necessary for the purpose that he should be in actual possession of the notes." We see that rule of the civil law, in regard to the nature of a pledge and the interests of the respective parties, corresponds with our law as stated in *Doak v. Bank, supra.* The same objection as we are now considering to plaintiff's right to sue and recover upon the pledged notes was raised upon similar facts in the recent case of *Gilman v. Heitman,* 137 Iowa, 336; but the Court overruled it, and in doing so said that the pledgor never ceased to be equitable owner of the note given in pledge, and that the pledgee held the legal title and right to possession merely as security for the payment of his own debt. It followed, said the Court, that the pledgee and other lien holders would not be prejudiced by permitting the pledgor to sue and obtain judgment upon the note he had delivered to his creditor in pledge. The Court then held that the pledgor could maintain the action upon the note and mortgage which secured it, notwithstanding they had been pledged to another as security for a debt, especially in the absence of any valid objection by the pledgee. Under such circumstances, said the Court, the existence of the pledge is not a matter of which the appellee can avail himself to resist the enforcement of the lien against the mortgaged property (which had been pledged). The Court held in *Bank v. McKinster,* 11 Wend. (N. Y.), 473, that the pledgor of a note was still the general owner and the pledgee the special owner, and the former could maintain an action against a bank, with which the pledgee had deposited the note for collection, for a breach of its duty to collect, and that either the pledgor or pledgee might bring the suit. Other cases bearing more or less upon the question are *Greer v. Woolfalk,* 60

Ga., 623; *Hewitt v. Williams,* 47 La. Ann., 742, 746; *Insurance Co. v. Lozano,* 39 *ibid.,* 321, 322; *Simon v. Wildt,* 84 Ky., 157; *Guest v. Rhine,* 16 Texas, 549.

If we consider the pledgee as the legal owner of the collateral, he holds it in trust, first, for himself, and then for the pledgor. If the debt for which the property is pledged be less than the value of the latter, the pledgor has not only a technical interest as a beneficiary, but a substantial one, and he is also a beneficiary in the sense that he will be entitled to the thing pledged upon payment of his debt. When he sues to preserve and protect his interest in the pledge, the court may so proceed or so mould its judgment or decree as to protect all parties concerned. Our present system of pleading and practice is elastic enough for this purpose. Its liberal procedure, it has been said, would in some respects shock a lawyer bred in the old school, but it is convenient, sensible, and in every way worthy of universal adoption. The common-law objection that its procedure and judgments are impossible "is simply absurd; the thing *is* done, and is therefore possible." Pomeroy's Rem. and Remedial Rights (1876), p. 153, note 3, referring to the "divided" judgment in *Gradwohl v. Harris,* 28 Cal., 150.

The nonsuit having been taken in deference to an erroneous opinion as to the law of the case, is set aside, and a new trial is ordered.

New trial.