WILLIAM GOTTLIEB, Appellant, *vs.* S. A. CROWE, JR., *et al.*
—(J. O. STOLL, Appellee.)

*Opinion filed December 15, 1937—Rehearing denied Feb. 10, 1938.*

JONES and WILSON, JJ., dissenting.

LEO SEGALL, and SAMUEL M. BLOOMBERG, for appellant.

ALBERT W. FROEHDE, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff (appellant here) brought an action in the municipal court of Chicago to recover on three bonds of $500 each, with interest thereon, against the defendants on their guaranty to pay the bonds. The defendant S. A. Crowe, Jr., was not served with process and did not enter his appear-

ance. Stoll will hereafter be referred to as the defendant. There was a trial before the court without a jury and a finding and judgment in plaintiff's favor for $1583. An appeal was taken to the Appellate Court for the First District where the judgment of the trial court was reversed, and the cause is brought to this court by appeal, on leave granted.

The record discloses that on January 15, 1927, the Ten Fifteen North Clark Building Corporation issued its construction bonds aggregating $250,000. Some years afterward this corporation was financially embarrassed and filed its proceeding in the district court of the United States for the Northern District of Illinois, Eastern Division, under section 77-B of the Bankruptcy act, as amended. November 26, 1934, the district court entered a decree confirming a plan for re-organization of the property. The decree found the plan for re-organization filed by the debtor had been referred to referee Adcock as special master; that the court considered the report of the master and the petition for confirmation of the plan, and found that the petition of the debtor was filed June 20, 1934, pursuant to the provisions of section 77-B of the Bankruptcy act; that on September 25, 1934, the debtor filed its proposed plan for re-organization and a hearing thereon was set for November 5, 1934, and notice given to all creditors and stockholders of the debtor by publication and by mail; that, thereafter, the plan was referred to special master Adcock and, after a hearing, he made his report on November 21, 1934, in which it was found that the plan was fair and equitable; that "It complies with the provisions of subdivision (b) of section 77-B of the Bankruptcy act;" that the plan provided it should not become effective until accepted by the required number of creditors, and that the plan was presented in good faith.

The court further found that on June 20, 1934, and thereafter, the debtor was unable to meet its debts as they matured and unless relief was granted by the court great loss would occur to the debtor's creditors and stockholders;

that the plan for re-organization had been accepted in writing by more than two-thirds of a certain class of its creditors and by more than a majority of another class of creditors; that no objections were made to the plan and it was ordered and decreed that the report of the referee Adcock, as special master, be approved; that the plan and order of confirmation be binding upon the debtor, all stockholders and "all creditors, secured or unsecured, whether or not affected by the plan, and whether or not their claims shall have been filed, and if filed, whether or not approved, including creditors who have not, as well as those who have, accepted." The plan provided for the organization of a new corporation and that for each $100 of first mortgage bonds issued by the debtor there be issued to the owners one share of common stock in the new corporation known as the Olympic Hotel Building Corporation; and the plan further provided for the payment of certain overdue interest to the bondholders, and that "the personal guaranty of J. O. Stoll and S. A. Crowe, Jr., of said First Mortgage 6½% Gold Bonds shall be canceled and surrendered in consideration of the transfer of all the assets of said debtor to the Olympic Hotel Building Corporation and the surrender of the said common stock of the debtor" and that all claims and rights of stockholders and creditors of the debtor, upon the confirmation of the plan, be discharged and canceled, and the only rights of such stockholders and creditors shall be those accruing to them in and through the securities to be issued by the new corporation. It further appears that notice of the hearing for the purpose of considering the plan was given to plaintiff; that, after the plan was approved, it was fully carried out and bonds aggregating $206,000 which was ninety-six per cent of the total bonds outstanding, had been surrendered and canceled.

It further appears that creditors of the same class as plaintiff in the instant case, filed written objections to the cancelation of the guaranty of the defendant and moved

that the confirmation of the plan, as approved by the district court, be vacated. The objections were referred to a special master to take evidence and make up his report and recommendation. The master heard the evidence and recommended that the objections be overruled and the court followed the recommendations of the master. All of the assets of the debtor have been transferred to the new corporation, the Olympic Hotel Building Corporation.

Plaintiff did not appear in the proceedings in the district court, but, during the pendency of the instant case in the municipal court of Chicago, he filed his verified petition in the district court, in which he set up the ownership of the three bonds of $500, each, and that he had not approved or accepted the plan of re-organization theretofore confirmed by the district court, and averred that the district court did not have the power to cancel the written guaranty of the defendant. The prayer was that the district court enter an order vacating or modifying the decree so as to eliminate the cancelation of the guaranty. The debtor filed a verified answer to the petition in the district court, in which it set up what had been done in that court, including the cancelation of the guaranty, and that plaintiff had been given a number of notices of the several hearings of the matters pending in the district court. The district court considered the petition and the answer and entered an order again refusing to modify the decree of the district court approving the plan of re-organization.

Counsel for plaintiff contend that the Bankruptcy act prohibits the cancelation of a guaranty and that there is no authority in section 77-B of that act, as amended, or elsewhere, giving the Federal court, while sitting in bankruptcy under section 77-B for re-organizing a "debtor" corporation, power and jurisdiction to cancel a guaranty, and that the district court, sitting in bankruptcy under section 77-B of the Bankruptcy act for re-organization of a "debtor" corporation, was a court of limited jurisdiction

and power and, therefore, that that part of the decree of the district court canceling the guaranty was void.

A Federal court is without jurisdiction to cancel a guaranty while sitting in bankruptcy under section 77-B for the re-organization of a "debtor" corporation. (*In re Diversey Building Corp.* 86 Fed. (2d.) 456; *Nine North Church Street, Inc.*, 82 id. 186.) In the *In re Diversey Building Corp. case* the Circuit Court of Appeals stated in its opinion: "The question here presented is whether the district court had the power to release Becklenberg from his guaranty of the old bond issue in consideration of his guaranty of the new bond issue, pursuant to the re-organization plan which had been approved by the court after its acceptance by two-thirds in amount of the allowed and effected claims of each class of creditors, but which had not been accepted by appellants, who were bondholders of the original issue. This question must be answered in the negative. * * * The trouble here is that the court exceeded its jurisdiction with respect to the subject matter before it." The district court was wholly without jurisdiction of the subject matter of this guaranty and that part of its order was therefore void. See, also, *Armstrong* v. *Obucino*, 300 Ill. 140.

The defendant contends, however, that the jurisdiction of the district court having once been attacked, the question can not again be raised; that since the district court overruled written objections and a motion to vacate the cancelation of the guaranty filed by creditors of the same class as the plaintiff, and since the plaintiff, by his petition, submitted to the district court for decision the question of the power of the court to cancel the guaranty and determine the plaintiff's rights, the plaintiff is bound by the decision of the district court. The case of *Chamblin* v. *Chamblin*, 362 Ill. 588, is cited in support of this contention. In that case Chamblin sued for divorce against his wife at Reno, Nevada. Service was had by publication

and Mrs. Chamblin was also served in Illinois with a summons and a certified copy of the bill of complaint. She did not appear and a default decree was entered in April, 1931. Mrs. Chamblin then brought a suit in Reno to set aside the divorce and a decree was entered in her favor from which Chamblin appealed to the Supreme Court of Nevada. That court reversed the decree with directions to the lower court to dismiss her suit. In April, 1933, Mrs. Chamblin filed a suit for separate maintenance in Mason county, Illinois, claiming that the decree for divorce in Nevada was obtained through fraud and that the courts of Nevada had no jurisdiction because Chamblin was not a *bona fide* resident of that State when he brought suit, which was the same issue of fact previously presented to the Nevada court. The circuit court of Mason county dismissed her suit and she appealed from that decree. This court affirmed the decree.

The distinction between the *Chamblin case* and this one is apparent. It is the difference between a determination of a question of fact in the *Chamblin case* and the drawing of a conclusion of law in this one. In the *Chamblin case,* the court had to decide a jurisdictional fact,—*i. e.,* whether or not Chamblin had been a *bona fide* resident of the State of Nevada for the required length of time. In this case, no question of jurisdictional fact is involved, the district court merely assuming that it had jurisdiction when it had none. The inherent power to determine the existence or non-existence of jurisdictional facts is an attribute which is essential to the functioning of every court. On the other hand, no court can expand its statutory or constitutional powers by a recital that it has jurisdiction of the subject matter. One act requires the determination of a fact which the court has power to determine; the other would be drawing a legal conclusion which the court would be barred from drawing by the statute or constitution which created it. If courts could not determine the necessary jurisdic-

tional facts they could not function, and, on the other hand, if by a recital they could assume powers not given to them there would be no way, by statute or constitution, to limit their jurisdiction.

In the case before us the district court did not have jurisdiction of the subject matter of the guaranty and its order in that respect is void and subject to collateral attack. (*Demilly* v. *Grosrenaud,* 201 Ill. 272; *O'Connor* v. *Board of Trustees,* 247 id. 54; *Rabbitt* v. *Weber & Co.* 297 id. 491; *Ashlock* v. *Ashlock,* 360 id. 115.) Jurisdiction of the subject matter cannot be conferred by consent, is not waived by appearance and may be raised at any time. *Town of Kingston* v. *Anderson,* 300 Ill. 577; *Rabbitt* v. *Weber & Co. supra.*

The judgment of the Appellate Court is reversed, and the judgment of the municipal court of Chicago is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*

JONES and WILSON, JJ., dissenting.