588

## In re FORTY–ONE THIRTY–SIX WILCOX BLDG. CORPORATION.

## CHICAGO TITLE & TRUST CO. v. HAIGHT et al.

### Nos. 6596, 6597.

Circuit Court of Appeals, Seventh Circuit.

Dec. 15, 1938.

Richard H. Hollen and George W. Ott, both of Chicago, Ill., for appellant.

Geo. I. Haight, Joseph Z. Willner, and Joseph J. Karlin, all of Chicago, Ill., for appellees.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

From an order entered February 25, 1938, allowing fees and expenses in a proceeding for corporate reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, these appeals are brought, one allowed by this Court and one by the District Court, and here consolidated.

A voluntary petition was filed June 13, 1935, in which a reorganization was sought, alleging inter alia that the debtor was a corporation. Respondent was the trustee under a trust deed in the nature of a mortgage and as such trustee, was the complainant in a proceeding pending in the Superior Court of Cook County, Illinois, for the foreclosure of the mortgage lien. The trust deed constituted a first lien on the real estate and the rents, issues and profits thereof involved in this proceeding, and secured the payment of outstanding bonds aggregating $95,000 with accrued interest thereon from September 20, 1930. The real estate was also subject to the lien of a junior trust deed in the nature of a mortgage securing payment of notes aggregating $15,000, with accrued interest thereon from some time in 1930. A suit is also pending in the State Court for the foreclosure of the lien of this mortgage. The property involved consists of land on which is located an apartment building and constitutes the sole asset of the debtor.

At the time of the filing of the petition, the real estate was in possession of a receiver appointed by the State Court, in both foreclosure suits with authority to sequester the rents, issues and profits.

Respondent was brought into the proceedings below by personal notice. It denied the jurisdiction of the District Court to take possession of the real estate or to restrain the prosecution of the foreclosure proceedings, or otherwise to proceed under the petition for reorganization. The District Court, after a hearing of the issues raised by respondent's answer, decided the same adversely to respondent and entered its order therein, (1) adjudging the petition for the corporation reorganization of the debtor as properly filed, (2) appointing Arthur P. Murphy temporary trustee of the debtor, (3) directing the receiver appointed in the State Court foreclosure proceedings to deliver up possession of the real estate to the temporary trustee, and (4) enjoining the respondent from further prosecution of the foreclosure proceedings.

Upon the allowance of an appeal to respondent, the District Court stayed further proceedings upon the filing of a bond in the sum of $5000. The temporary trustee appointed by the District Court was permitted to take possession of debtor's property with the understanding that such action would be without prejudice to the rights of any of the interested parties. Thereupon, the State Court receiver surrendered control of the real estate and funds in its possession to the temporary trustee who proceeded to manage and operate the same, and collect the rents therefrom until the order appealed from was entered. This Court affirmed the orders of the District Court. In re Forty-One Thirty-Six Wilcox Bldg. Corporation, 7 Cir., 86 F.2d 667. Thereafter, the cause was reviewed by the Supreme Court, which on November 15, 1937, reversed the same with costs and remanded the cause to the District Court for further proceedings in conformity with its opinion. Chicago Title & Trust Company v. Wilcox Building Corporation, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147. The Supreme Court decided that the debtor was not a corporation within the terms of Section 77B and was without authority to invoke the powers of the Court under said Act.

On December 20, 1937, Arthur P. Murphy, the temporary trustee appointed in the District Court, was appointed and qualified as Receiver in the State Court foreclosure proceedings.

Subsequent to the filing of the Supreme Court mandate, the petitioners filed their petition for the allowance of costs and expenses and for compensation for services rendered by them in connection with the proceedings as related. Respondent thereafter filed its petition, asking that possession of the real estate be turned over to the receiver appointed in the State Court foreclosure proceedings and that all moneys collected by the temporary trustee be turned over to such receiver without deducting therefrom any expenses or fees. Respondent denied that the District Court had jurisdiction to make the allowances requested, but if so, that the allowance could not properly be made out of the funds in the possession of the temporary trustee, as respondent had a first and paramount lien therein.

Upon hearing, the District Court vacated the orders which had been reversed by the Supreme Court in accordance with the mandate of that court and allowed the sum of $958.47 for expenses and the sum of $1500 to the attorneys who had represented the debtor corporation in the District Court, as well as in this and the Supreme Court, for services rendered by them, and directed that possession of the

real estate and the balance of the funds in the possession of the temporary trustee, after making such payments, be turned over to the State Court receiver. It is from this order allowing costs, expenses and attorney fees to the petitioners that these appeals have been taken.

▌Two essential questions are presented. First, did the District Court have jurisdiction to enter the orders complained of? and, Second, if jurisdiction existed, did it have the authority? Respondent argues that by reason of the decision of the Supreme Court, the orders of the District Court approving the petition, appointing a temporary trustee and restraining the prosecution of the foreclosure proceedings, were void, and that likewise its possession and control of debtor's property was without authority. On the other hand, petitioners contend that the orders of the District Court, in view of the Supreme Court decision, were merely erroneous. We are of the opinion that respondent's theory is not tenable in this respect. The petition filed by the debtor was regular on its face and by its allegations, jurisdiction appeared to exist. Respondent, in denying a jurisdictional allegation, created an issue, which it is true, was finally determined in its favor, but it does not follow from this that the orders entered by the District Court were a nullity. When the issue was thus created, the court was confronted with the proposition of determining such issue, and it would seem it had jurisdiction for the purpose of determining the jurisdictional question, if for no other.

In Denver First National Bank v. Klug, 186 U.S. 202, 22 S.Ct. 899, 46 L.Ed. 1127, an involuntary petition in bankruptcy was filed against Klug who defended on the grounds that he was a farmer and, therefore, the bankruptcy court was without jurisdiction. The District Court determined the issue in favor of the debtor and dismissed the petition, from which an appeal was had. The court, at page 204, 22 S.Ct. at page 900 said:

"The conclusion was, it is true, that Klug could not be adjudged a bankrupt, but the court had jurisdiction to so determine, and its jurisdiction over the subject-matter was not and could not be questioned.".

▌In the instant case, the most that can be said is that it was finally determined that the order of the District Court was erroneous. It was the character of order binding on all parties to the proceeding until reversed by a higher tribunal. It was not subject to collateral attack.[1] Respondent, in support of this point, relies strongly on the case of Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Id., 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151. There the court assumed jurisdiction of a creditor's bill and appointed a receiver. Jurisdiction depended upon diversity of citizenship, but the bill disclosed on its face that the amount in controversy was $2100. The Supreme Court held that the lower court lacked jurisdiction and was without power to make any charge upon the assets coming into its control during the course of a proceeding in which it had no jurisdiction. The bill there disclosed on its face that the court was without jurisdiction, which we think is readily distinguishable from the situation here, where the petition, on its face, showed jurisdiction and which, when the issue was raised, could only be determined by a hearing.

In Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435, we find a situation somewhat similar to the present case, although not entirely parallel. There the Federal Court appointed a receiver while a receivership proceeding was pending in the State Court. This, the Supreme Court held to be error. The Supreme Court, however, with reference to the costs of the receivership, on page 132, 29 S.Ct. on page 235, said:

"The receivership has gone on pending the proceedings upon appeal, and we are of opinion that justice will be done if the costs of the receivership are paid out of the fund realized in the Federal court, and it is so ordered; otherwise the judgment of the Circuit Court of Appeals is affirmed."

The Supreme Court in the Karatz Case distinguished the Palmer Case in the following statement, at page 642, 43 S.Ct. at page 642:

"The case at bar is unlike Palmer v. Texas, 212 U.S. 118, 132, 29 S.Ct. 230, 53 L.Ed. 435, upon which the receivers rely. In that case the costs and expenses of a

---

[1] Toy Toy v. Hopkins, 212 U.S. 542, 29 S.Ct. 416, 53 L.Ed. 644; Gottlieb v. Crowe, 368 Ill. 88, 93, 12 N.E.2d 881; In re Sterba, 7 Cir., 74 F.2d 413, 417.

receiver erroneously appointed by the federal court were directed to be paid out of funds realized in that court. There the Circuit Court had jurisdiction as a federal court; but the decree appointing the receiver was reversed, because it was erroneous."

Having concluded that the court was not without jurisdiction to allow the fees and expenses in controversy, we are still confronted with the question of its authority to so do. We approach this phase of the case from a rather sympathetic viewpoint for the reason that the reasonableness of the charge is not disputed and there is no question but what the services were rendered and the money expended in the utmost good faith. It must not be overlooked, however, that petitioners were the attorneys for the debtor and sought the aid of the bankruptcy court in the form of a petition for reorganization. They represented the debtor in the District Court, in this court and in the Supreme Court, and in fact, appeared in no other capacity.

It is argued by petitioners that the cause having been initiated under Section 77B of the Bankruptcy Act, all proceedings had thereunder, including the allowances in question, were subject to its control. We see no error in this argument, but this does not solve the question of the court's authority. Petitioners evidently realize the insecurity of their position, inasmuch as no provision of the Bankruptcy Act is cited which would confer such authority. We are told that the court was empowered with the right to appoint representatives for the purpose of defending its order in the higher courts when its jurisdiction was challenged. Our attention is called to no authority sustaining this proposition, but even if there be such, the fact remains that the court made no such appointment. The trustee was not authorized to employ counsel and it can not be claimed that petitioners acted as attorneys for the trustee. There is no occasion for us to discuss what the situation might have been under those circumstances.

Petitioners supply us with no authority and from our own investigation, we are convinced there are none which sustain the petitioners' contention. In re Veler, 6 Cir., 249 F. 633, on the question of the payment of the receiver's compensation and expenses, the court on page 641 said:

"In cases where the receiver had never come into possession of the estate, or where there was no fund in court, excepting that which was the property of those who had always and successfully resisted the appointment of a receiver, it has been held that those who procure his appointment must pay his compensation and expenses. These cases were discussed in our opinion in Re National Carbon Co. [6 Cir.], 241 F. 330, 333, 154 C.C.A. 210. They apparently rest upon the rule of necessity. Since there is no estate or fund which can rightly be charged, and since the expenses must be paid by some one, those causing the receivership must respond."

In the case of In re Wakey, 7 Cir., 50 F.2d 869, 75 A.L.R. 1521, this court reviewed the Illinois authorities and decided that a trustee under a real estate mortgage in Illinois was entitled to the rents collected by the trustee in bankruptcy, although no prior demand in the bankruptcy court had been made by the mortgage trustee and no action had been taken by him prior to the bankruptcy proceedings to sequester the rents. The theory on which we based our decision was that while the real estate was under the jurisdiction of the bankruptcy court, the rents collected by the trustee in bankruptcy were held by him for the benefit of all persons according to their respective rights therein and no action was necessary by the mortgage trustee to sequester the rents. In Beach v. Macon Grocery Co., 5 Cir., 125 F. 513, the court on page 517 announced the rule thus:

"The property having been taken from the defendants against their consent under an erroneous order, which they resisted successfully in an appellate court, the only proper course is to return the property without charge of any kind against it or against the successful defendants."

The cases which we have referred to have reference, of course, to the original Bankruptcy Act, but our study of the provisions of section 77B convinces us that the want of authority is just as apparent. Subdivision (c), 11 U.S.C.A. § 207(c), provides that "upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him * * * (9) may allow a reasonable compensation for the services ren-

dered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, * * * and the attorneys or agents of any of the foregoing and of the debtor * * *." This clause has been before the court for construction on numerous occasions.

It has been held, without exception, so far as we find, that the court is only authorized to compensate for services rendered in connection with the "proceeding and the plan" and that the services must be of such a character that they have been beneficial in accomplishing the purpose of the act, namely, the rehabilitation of the debtor. This interpretation is aptly stated in Sartorius et al. v. Bardo et al., 2 Cir., 95 F.2d 387, where the court on page 389 said:

"A proceeding under section 77B seeks the rehabilitation of the debtor, and can have no further purpose; as soon as it appears that this is impossible, subdivision (c) (8) declares that the court 'may' dismiss it, or proceed to liquidation. When either happens it becomes plain that the whole proceeding has benefited no one, just as the judge here declared. Possibly it might indeed be desirable to make some allowance, win or lose, to creditors who prepare a plan, since the hazard of going empty-handed if it fails, may deter them from preparing one, which might in the end prove successful."

In Oakland Hotel Co. v. Crocker First National Bank, 9 Cir., 85 F.2d 959, wherein the debtor's petition for reorganization was dismissed, the court with reference to fees for attorneys for the petitioning debtor, page 961, said:

"The trial court refused to make an allowance for attorneys' fees to the appellant, and appellant seeks a reversal of this order, and in addition a further allowance for its attorneys' fees by this court. The trial court correctly determined that the mortgaged property should not be subjected to the claims of the appellant for attorneys' fees. The only result of this proceeding was to defer the prosecution of the foreclosure proceeding."

Again, In Re Nine North Church St., 2 Cir., 89 F.2d 13, the court in discussing the clause in question, page 14, said:

"Compensation can only be allowed 'in connection with the proceeding and the plan.' The words 'in connection with the proceeding,' if taken alone, might cover any services in the course of the 77B proceeding. We think, however, that they should be limited to such necessary services as are steps in a reorganization, not merely proposed or temporarily adopted through error, but finally effected."

Again this court In Re Flamingo Hotel Co., 7 Cir., 81 F.2d 749, on page 750 said:

"Section 77B(c) (9), 11 U.S.C.A. § 207 (c) (9), provides that the judge may allow a reasonable compensation for services rendered in connection with the proceeding and the plan by officers, parties in interest, or other representatives of creditors or stockholders. We think this is to be construed as referring to services directly connected with the plan, and not to those which have to do with the operation of the business or the administration of the estate while the plan is being formulated."

A further review of such authorities would serve no good purpose. We cite a number in a footnote.[2] We are forced to conclude in view of such authorities that a court is without right to allow fees or expenses except where they have been earned or incurred in connection with the formation of a plan of reorganization which has been, theoretically at least, of benefit to all parties in interest. Unfortunately, petitioners served in no such capacity. Conceding they acted in good faith, believing that their services were being rendered in the interest of the debtor and others, the fact remains that they failed at the very inception of the proceedings, and we think it is a statement of fact to say that their services were useless and of no avail, even to their own client, the debtor, and certainly it must be true insofar as the respondent is concerned. Even if the court were possessed of the authority to allow compensation to petitioners, it could not be paid from the fund in the hands of the temporary trustee. That fund was accumulated from the rents de-

---

[2] In re Memphis Street Ry. Co., 6 Cir., 86 F.2d 891; Florida Nat. Bank of Jacksonville v. United States, et al., 5 Cir., 87 F.2d 896; In re Tower Bldg. Corpo-ration, 7 Cir., 88 F.2d 347; Sullivan & Cromwell v. Colorado Fuel & Iron Co. et al., 10 Cir., 96 F.2d 219.

rived from the mortgage property upon which respondent had a lien.

The case of Duparquet Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, seems to leave no doubt that a mortgage lien may not be impaired in a 77B proceeding before a final plan of reorganization has been approved. In discussing the question, the court on page 222, 56 S.Ct. on page 415, said:

"It is common learning that an equity receiver in suits to conserve the assets or divide them among creditors must yield to a trustee in bankruptcy. Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215. On the other hand, it is also common learning that not even a trustee in bankruptcy may override a valid mortgage lien or supersede a receiver who has been put into possession in fulfilment of the mortgage contract. Straton v. New, 283 U.S. 318, 322, 327, 51 S.Ct. 465, 75 L.Ed. 1060; Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; Lincoln Savings Bank v. Realty Associates Security Corp. [2 Cir.], 67 F.2d 895; In re Berdick, (D.C.), 56 F.2d 288; Russell v. Edmondson [5 Cir.], 50 F.2d 175; In re Brose,' [2 Cir.], 254 F. 664; Carling v. Seymour Lumber Co., [5 Cir.], 113 F. 483, 491. Section 77B [11 U.S.C.A. § 207] does not make these precedents inapposite. True, the suit for the foreclosure of the mortgage may be stayed or enjoined upon a showing of necessity (section 77B (c) (10), 11 U.S.C.A. § 207(c) (10); the lien may be transferred to the proceeds of a sale (section 77B (b) 11 U.S.C.A. § 207 (b); at times the holder of the lien may have his security modified or reduced by the plan of reorganization when finally approved, section 77B (b), (e), (f), (h) 11 U.S.C.A. § 207 (b, e, f, h). Cf. Continental Illinois Nat. Bank & Trust Co., v. Chicago, R. I. & P. Ry. Co., supra, 294 U. S. 648, pages 675, 676, 677, 55 S.Ct. 595, 79 L.Ed. 1110; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 585, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. Nowhere does the statute say, however, that those results or any of them shall follow automatically upon the approval of the petition as properly filed. Section 77B (a). Only by excluding a receiver in foreclosure from the scope of subdivision (i) can we avoid anomalous encroachments upon vested rights and interests."

We thus reach the conclusion that the action of the court in allowing petitioners' application for fees and expenses, under existing circumstances, was without authority.

The order appealed from is reversed.