## ALLEN, ET UX. *v.* KAPLAN

[No. 380, September Term, 1968.]

*Decided November 5, 1969.*

410

411

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Michael P. Crocker,* with whom were *G. Van Velsor Wolf, Paul V. Niemeyer* and *Piper & Marbury* on the brief, for appellants.

*William D. Donnelly,* with whom were *Donnelly & Golin* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

William L. Allen and Rose F. Allen, his wife (the Allens) brought suit against Milton Kaplan in the Circuit Court for Prince George's County to enforce what they conceived to be Kaplan's obligation as co-maker of a promissory note. From an order entering summary judgment in Kaplan's favor for costs, the Allens have appealed.

In 1961, the Allens sold a tract of 138 acres in Prince George's County to Harrison Construction Co., Inc. (the Harrison Company) for approximately $600,000, of which $494,190.40 was represented by the deed of trust note signed by the Harrison Company and Kaplan, and secured by a deed of trust on the property, executed by the Harrison Company. The note called for annual payments of $49,419.04 in reduction of principal commencing on 31 May 1962; for semi-annual payments of interest beginning 30 November 1961 on the unpaid balance of principal at the rate of 3% per annum; for interest at the rate of 6% on arrearages of interest; in the

event of default, for current interest at the rate of 6% and for the acceleration of maturity; for a late charge of 1% on payments more than 15 days in arrears; and for the payment by the obligors of "all costs of collection, including a reasonable attorney's fee if [the note was] referred to an attorney for collection after default."

The note was not only signed by the Harrison Company and Kaplan, but contained the provision:

> "The undersigned, Milton Kaplan, hereby agrees to be bound by and liable on all the terms, conditions and covenants of the deed of trust securing this note."

In October, 1961, less than three months after the consummation of the purchase, the Harrison Company filed a petition in bankruptcy. When the instalment of interest due 30 November 1961 was not paid, the Allens gave the obligors notice of acceleration of maturity, and demanded payment. After considerable procedural sparring in the bankruptcy court, which is of no consequence here, the property subject to the deed of trust was sold by the bankruptcy trustee along with other property owned by the Company. Of the sale price, $604,632.85 was allocated to the Allen tract, and from this the unpaid principal amount of the debt owed the Allens, $494,-190.40 was ultimately paid. It would appear that the balance of the sale proceeds would have been sufficient to pay the additional amounts now claimed by the Allens, but the record does not disclose the extent to which the claims of unsecured creditors of the bankrupt were satisfied.

Then commenced a contention as to the amounts to which the Allens were entitled in satisfaction of the provisions of the note which provided for 6% interest on arrearages, the late charge and interest after default at the rate of 6%, and the stipulation that the obligors would pay "all costs of collection, including a reasonable attorney's fee."

The Allens claimed an amount of $84,171.28, of which $64,171.28 was interest and $20,000 represented counsel fees. The referee allowed them $41,026.12, of which $36,026.12 was interest and $5,000.00 was an allowance of counsel fee. The difference between the amount claimed and the amount allowed, other than the reduction in the amount of the counsel fee, is explained by the fact that the referee reduced the rate of interest claimed from 6% to 3%, except as to the sum of $65,000, which the Allens had borrowed from Citizens National Bank of Laurel, pledging the Harrison Company-Kaplan note as security. Because the interest charged on this loan was 5½%, the referee allowed 5½% on $65,000.[1]

In disallowing the full amount of the interest claimed, the referee relied on broad equitable principles, *Vanston Bondholders Protective Committee v. Green,* 329 U. S. 156, 67 S. Ct. 237, 91 L. Ed. 162 (1946); *United States v. Harrington,* 269 F. 2d 719 (4th Cir. 1959), but was careful to point out that the order was not intended to preclude further action against a party other than the Harrison Company:

> "This Order is made without prejudice to the rights of the Allens against any party, other than the Bankrupt, or any guarantor or endorser of the Deed of Trust Note evidencing the obligations of the Bankrupt to the Allens, and this Order has no effect upon the rights of the Allens against any party other than the Bankrupt by reason of the Note or the Deed of Trust."

The Allens took no appeal from the referee's order but sued Kaplan on the note and the deed of trust in the Circuit Court for Prince George's County. Their declaration claimed damages in the amount of $60,000. A detailed computation of the amount which they claim totals $56,607.29. In summary, this is made up of unpaid

---

1. An additional sum of $1,000 was borrowed during the bankruptcy proceeding.

principal, interest on arrearages of interest, late charges and the interest differential, together with $16,946.40 of attorneys' fees and expenses not allowed in the bankruptcy proceeding, and additional attorneys' fees incurred in the Prince George's County suit amounting to $3,500. While the arithmetical accuracy of these calculations does not appear to be in dispute, it is the entitlement which is challenged.

The Allens question the correctness of the result reached by the court below, which concluded that the determination reached by the referee was *res judicata* as to their claim. The Allens rely principally on our decision in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A. 2d 100 (1968), which was also cited in the opinion of the lower court. As we see it, the Allens are right. In *Pat Perusse,* Chief Judge Hammond, in the careful opinion which he filed for the Court, recognized that the rule of mutuality had always had its exceptions, modifications and extensions, and that our predecessors had intimated in at least two cases that the requirement of mutuality of parties might not be insisted on. *Pat Perusse* recognized the rule of the recent cases that "The criteria for determining who may assert a plea of *res judicata* differ fundamentally from the criteria for determining against whom a plea of *res judicata* may be asserted," *Bernhard v. Bank of America,* 19 Cal. 2d 807, 811-12, 122 P. 2d 892 (1942), cited with approval in *Zdanok v. Glidden Co.,* 327 F. 2d 944, 954 (2d Cir. 1964) but also recognized the rule of *Coca-Cola Co. v. Pepsi-Cola Co.,* 36 Del. 124, 132-33, 172 A. 260 (1934) that "Where the plea of *res judicata* is raised by one not a party to the prior suit against one who was such a party * * * assuming the identity of the issues, we are of the opinion that a plaintiff *who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided.*" (emphasis added). While *Pat Perusse* widened the breach in the wall of mutuality and permitted the plea of *res judicata* to be raised

by one not a party to the prior suit against one who was a party, mutuality still shelters the plaintiff who did not select the first forum.

Not only did the Allens not choose the bankruptcy court as the forum in which to assert their rights against the Harrison Company, but the issues as regards the bankrupt, under the structure of the Bankruptcy Act, were significantly different from the issues as regards Kaplan, which are controlled by State law. *Vanston Bondholders Protective Committee v. Green, supra,* 329 U. S. 156, 67 S. Ct. 237, 91 L. Ed. 162 (1946) ; *Heiser v. Woodruff,* 327 U. S. 726, 66 S. Ct. 853, 90 L. Ed. 970 (1946) ; *Young v. Higbee Co.,* 324 U. S. 204, 65 S. Ct. 594, 89 L. Ed. 890 (1945) ; *Prudence Realization Corp. v. Geist,* 316 U. S. 89, 62 S. Ct. 978, 86 L. Ed. 1293 (1942); *Meek v. Centre County Banking Co.,* 268 U. S. 426, 45 S. Ct. 560, 69 L. Ed. 1028 (1925) ; 30A Am. Jur. *Judgments* § 335 (1958) at 379. If the issues are not identical, the shelter of mutuality remains. *Pat Perusse, supra,* 249 Md. at 38, 39, 40, 45; *Polansky v. Orlove,* 252 Md. 619, 624, 251 A. 2d 201 (1969).

Kaplan urges that collateral estoppel without mutuality is still available to him as a defense under the indemnitor-indemnitee exception to the mutuality rule, citing *Ugast v. LaFontaine,* 189 Md. 227, 55 A. 2d 705 (1947) and Restatement, *Judgments* § 97 (1942). We think that the lack of identity of issues, heretofore discussed, is the answer to this contention, fortified by the results reached in the cases to be discussed below, where the scaling down of the debtor's obligations in reorganization proceedings has been held to offer no solace to the solvent guarantor.

We have been referred to no case, and have found none, which is precisely dispositive of the issue here presented. There is ample authority to support the general propositions that a discharge in bankruptcy has no effect on the obligation of the person jointly liable with the bankrupt, Bankruptcy Act § 16, 11 U.S.C. § 34; *Helms v. Holmes,* 129 F. 2d 263 (4th Cir. 1942) ; 1 *Col-*

*lier on Bankruptcy* § 16.02 (14th Ed. 1969) at 1523-1526, and that a bankruptcy court has no power to relieve parties other than the bankrupt from their debts or obligations. *Commercial Wholesalers, Inc. v. Investors Commercial Corp.*, 172 F. 2d 800 (9th Cir. 1949).

Reasoning by analogy from the treatment accorded similar contentions in reorganization proceedings under Chapter X (formerly § 77 B) of the Bankruptcy Act, we find support for our conclusion that the determinations of the bankruptcy court (other than that which' fixed the amount of the fee to be allowed the Allens' counsel for services in connection with the bankruptcy proceedings) were not *res judicata* as to the Allens, because the court not only lacked jurisdiction over the Allens' claim against Kaplan, but specifically reserved the question for determination in some other forum.

It is this fact which distinguishes this case from *Stoll v. Gottlieb*, 305 U. S. 165, 59 S. Ct. 134, 83 L. Ed. 104, 38 Am. Bankr. R. (n.s.) 76 (1938), *rev'g Gottlieb v. Crowe*, 368 Ill. 88, 12 N.E.2d 881 (1937), *rev'g Gottlieb v. Crowe*, 289 Ill. App. 595, 7 N.E.2d 469 (1937), discussed in 25 U.Va.L.Rev. 725 (1939), 48 Yale L.J. 879 (1939), 51 Harv.L.Rev. 1449 (1938), 36 Mich.L.Rev. 318 (1937) and brings it within the rule of *In re Nine North Church Street, Inc.*, 82 F. 2d 186, 30 Am. Bankr. R. (n.s.) 541 (2d Cir. 1936) (guarantor of bonds not released by reorganization of obligor where interest rate and maturity were modified); *Central Nat'l Bank of Cleveland v. Mills*, 62 Ohio App. 413, 24 N.E.2d 607 (1939), *cert. denied* 313 U. S. 593, 61 S. Ct. 1114, 85 L. Ed. 1547 (1941) (guarantor of lease unaffected by reorganization of lessee which relieved lessee from liability on lease).

In *Stoll*, the bankruptcy court, in the course of a reorganization proceeding, had released the guarantor of the debtor's obligations with the consent of a majority of the creditors. Gottlieb, a non-assenting creditor, sued to recover on the guaranty in the Illinois State courts. The Supreme Court of the United States held that

whether or not the bankruptcy court was correct in asserting jurisdiction over this guaranty, its decision on this point could have been made the subject of direct appeal but was not subject to collateral attack in the State courts.

> "After a federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact." 305 U. S. at 172.

In the instant case, the referee in no uncertain terms stated that he was not asserting jurisdiction over Kaplan, the co-signer, and that his decision in no way prejudiced further action against anyone other than the bankrupt corporation. Thus, the holding of the Supreme Court in *Stoll v. Gottlieb, supra,* is inapposite to this controversy and does not preclude the decision which we have reached.

As the author of the casenote, *Effect of Guarantor's Liability of Principal's Discharge in Bankruptcy and Analogous Proceedings,* 25 U.Va.L.Rev., *supra,* at 726-27 states:

> "* * * [E]xtinguishing or modifying the collateral obligation upon the reorganization of the principal debtor would defeat the very purpose of the guaranty—*i.e.,* protection against the principal's inability to pay. In the comparatively recent case of *In re Nine North Church Street* [82 F. 2d 186], the patent unfairness of such a course was recognized. While the court conceded that any loss occasioned by the reduction of the guaranteed claims under the reorganization plan would fall upon the guarantor, it showed proper justification for this conclusion in the following language:
>
> > 'But that is as it should be. Maryland [Maryland Casualty Co., the guarantor] as-

sumed the guaranty and now must be held to it. To allow a guaranty to be modified every time the principal debtor found itself in financial difficulties would be to make a guarantor's obligation nominal only. The very purpose of, and only value in, a guaranty is as a protection against the principal's inability to pay.' " [82 F. 2d at 188].

Kaplan would have us hold that the Allens' attempt to accelerate the maturity of the note was ineffective because notice was given on 6 December 1961 at a time when the bank was the holder of the note, and relies on the provision of the note that upon default "* * * the entire balance of principal and interest shall, at the holders' option become immediately due and payable * * *."

While it is true that under § 51 of the negotiable instruments law, Maryland Code Art. 13 § 72, in force in 1961, it was generally held that a pledgor could maintain no action for the collection and enforcement of pledged collateral until he regained possession of it, *Johnson v. United Securities Corp.*, 194 A. 2d 132 (D.C. Ct.App. 1963), there is authority in support of the proposition that where a pledgor retained an existing interest by reason of the fact that the amount of the collateral is greater than the debt which it secured, the pledgor could maintain the action. *Butler v. Rahm,* 46 Md. 541, 550 (1877) ; *United States ex rel. Allen Constr. Corp. v. Verrier,* 179 F. Supp. 336 (N.D. Me. 1959) ; *White v. Winslow,* 209 N. C. 207, 183 S. E. 284 (1936) ; *Rosenberg v. Cohen,* 127 Me. 260, 143 A. 97 (1928) ; *Ball-Thrash & Co. v. McCormick,* 162 N. C. 471, 78 S.E. 303 (1913) ; 12 Am.Jur.2d *Bills and Notes* § 1088 (1964) at 117; 10 C.J.S. *Bills and Notes* § 551 (1938) at 1177; Annotation, 65 A.L.R. 1321 (1930) at 1326. Such was the case here, where the Allens pledged a note for $494,-190.40 to secure bank borrowings of $65,000. Additionally, as we read Maryland Rule 203, which permits an action to be prosecuted in the name of the real party in

interest, we believe that, except for the bankruptcy, the Allens could have sued and recovered on the note, subject, of course, to the satisfaction of the bank's interest. If they could have sued, they certainly could have demanded payment, or given notice of acceleration of maturity.

Kaplan would make much of his plea on equitable grounds, not relied on in the opinion of the lower court. This defense is largely directed at the Allens' delay in enforcing their claim and a partial failure of the consideration which induced him to sign the note. As a result of the sale of the property free of the lien of the deed of trust, which had provided for the payment of the balance of purchase price over a period of 10 years, the debt became payable in full—an event which he had not contemplated. In other words, Kaplan regards the guaranty forced on him by the bankruptcy as more onerous than the one he assumed.

As we look at the case, the equities may well run the other way: it is entirely possible that it was Kaplan's assumption of the deed of trust which induced the Allens to finance a substantial portion of the purchase price. As the Second Circuit observed in *In re Nine North Church Street, Inc., supra,* "To allow a guaranty to be modified every time the principal debtor found itself in financial difficulties would be to make a guarantor's obligation nominal only. The very purpose of, and only value in, a guaranty is as a protection against the principal's inability to pay." 82 F. 2d at 188.

From what we have said, we conclude that summary judgment in Kaplan's favor was entered in error. We shall reverse and remand the case for the entry of summary judgment in favor of the Allens for $36,160.89 and costs with interest from 30 April 1968, the date when the Allens calculated the amount due in support of their motion for summary judgment, and for hearing with respect to the reasonableness of the counsel fees claimed. In this connection, we regard the order allowing a fee of $5,000 for services rendered by the Allens' counsel in

the bankruptcy proceedings as binding on the Allens, since no appeal was taken, and note that no allowance should be made for such services as may have been occasioned by the circumstance that the deed of trust was defective in form.

> *Judgment reversed, case remanded for entry of summary judgment in favor of appellants for $36,160.89 with interest from 30 April 1968, and costs and for further proceedings in conformity herewith. Costs on appeal to be paid by appellee.*