The Central National Bank of Cleveland, Trustee, Appellant, *v.* Mills, Appellee.

(Decided November 6; 1939.)

*Mr. Dorr E. Warner* and *Mr. Singleton P. Outhwaite,* for appellant.

*Messrs. Wilson & Rector,* for appellee.

GEIGER, J.   This is an action wherein plaintiff seeks to recover from the defendant the sum of $201,434.29 on account of alleged liability of the defendant on certain rent obligations as a guarantor of Mills Cleveland Restaurant Company.

On November 2, 1939, the death of James O. Mills, defendant-appellee, having been suggested to this court, this action is revived in the name of Robert O'Brien, executor of his estate.

This cause is before this court on an appeal from the order and judgment of the Court of Common Pleas. The judgment was exemplified by an entry filed November 28, 1938, reciting in substance that the cause then came on for trial, and a trial by jury having been waived, was submitted to the court on the pleadings, the statement of counsel, the stipulation of the parties, and the evidence adduced by the plaintiff.   At the conclusion of the statement made by counsel the plaintiff moved for judgment on statement, which motion was overruled.   At the conclusion of the testimony offered by plaintiff, the defendant moved for judgment in his favor, upon the statement of the respective counsel, the pleadings, the stipulation, and the evidence.   The

motion was sustained, and it was ordered that the petition be dismissed.

A motion for new trial was duly filed, and overruled, and a notice of appeal on questions of law was filed by plaintiff. It will be noted that the defendant based his motion upon the statement of counsel, the pleadings, the stipulation, and the evidence. A bill of exceptions was allowed, made up almost entirely of the statement of counsel, the colloquy between counsel and the court, and the statement of the court upon which it based its judgment. Attached to the bill is a stipulation.

The matter is complicated, both as to facts and law, and it will be necessary to state at some length the pleadings, and to sketch briefly the statement of counsel as the judgment was based upon the pleadings and statement, there being but little evidence introduced.

The action of the plaintiff, The Central National Bank, as trustee, against the defendant, James O. Mills, seeks to enforce the defendant's guaranty of the performance of the covenants of a lease which had been assigned to plaintiff by the original lessor, the Smythe Building Company.

The statements and pleadings disclose the following facts: In 1922 the Smythe Building Company leased certain premises to James O. Mills, defendant, for the term of 20 years. This lease was assigned by Mills, as an individual, to the Mills Cleveland Restaurant Company on July 14, 1924, and thereafter such corporation conducted a restaurant on said premises. On February 26, 1932, the defendant, Mills, and the Mills Cleveland Restaurant Company were in default in the payment of rent under the lease in the sum of $31,250. On February 29, 1932, the restaurant company executed to the building company its promissory note in the amount of the defaulted rent. Under a guaranty, dated March 1, 1932, Mills consented and agreed with the building company that he would remain liable as guarantor under the lease of March 1, 1922, for all

amounts due from the lessee up to March 1, 1932. On March 1, 1932, the building company leased the premises for a period of fifteen years, and as part of the same transaction, defendant guaranteed the payment of rent and consented that he would remain liable as lessee under the lease of March 1, 1922.

Said guaranty is substantially as follows:

In consideration of the execution of the lease by the building company to the restaurant company, dated March 1, 1932, and in consideration of the consent of the building company and the cancellation of its lease to Mills dated March 1, 1922, Mills agrees to consent to the cancellation of the lease and "consent and agree that I shall remain liable as lessee under the terms of said lease so cancelled for all amounts due thereunder from lessee to lessor up to March 1, 1932, to the extent that said amounts have not heretofore been paid."

He personally guarantees to the building company the performance by the restaurant company of all the conditions of the lease "including the payment of all rent and other sums by the lessee to be paid, and the performance of all other terms and conditions of said lease by the lessee to be performed." He agrees that no extension of time for the payment of the rent nor any act or omission of the lessor or lessee, "save only payment of the rent reserved therein and compliance with the terms and conditions of said lease by lessee * * * shall be construed as releasing or in any manner modifying my obligation as such guarantor, and I expressly agree * * * I may be sued jointly with the lessee in any action brought by lessor * * * or that I may be sued severally upon this guaranty * * *."

This agreement was signed October 31, 1932.

On October 31, 1932, the building company assigned to the Guardian Trust Company, as trustee, its interests in the lease and the guaranty of Mills. This assignment was for the purpose of providing security for an issue of bonds, totaling $400,000, under an in-

denture between the building company and the Guardian Trust Company, of which trust company the plaintiff is the successor. The defendant, Mills, was the president of both the restaurant company and the building company.

By Article X of the indenture, exhibit A, between the Smythe Building Company and the Guardian Trust Company, it is provided that until the company shall make default in the payment of money secured by the bonds or in performance of any condition of said bonds or of the mortgage or of the leases, the trustee shall permit the company to possess the trust estate and to receive the rents in the same manner as if this deed of trust had not been made.

On April 29, 1933, the restaurant company was in default for the payment of rent from March 1, 1932, to April 30, 1933, in the total sum of $45,270.13, and was in further default of certain bills for heating which, under the contract, were to be paid by the lessee, making total default at the time of $48,847.29. Mills did not pay the balance for which he was obligated under the terms of his guaranty. On April 29, 1933, Mills was president of the building company and owned practically all of its preferred and common stock, and was also the president of the restaurant company and owned practically all of the stock of that company. On April 29, 1933, the restaurant company delivered to the building company its note for $48,847.29, the amount in which the restaurant company was in default; and at the same time the restaurant company executed to the building company its note for $31,250 in renewal of its former promissory note. On December 1, 1936, the amount in default for rent was $86,876, with an additional amount due for steam heating. Mills did not pay any of the defaulted rent as it was claimed he was obligated to do under the terms of his guaranty, and has not paid any portion since.

On December 31, 1936, the restaurant company filed its petition in bankruptcy, seeking reorganization under Section 77-B of the Bankruptcy Act. In the proceeding before the Bankruptcy Court, a plan of reorganization was submitted, in which it is recited that the indebtedness to the building company discloses the fact that at no time has the restaurant been able to meet the amount of rent, and among the provisions for the payment of creditors the plan provided that there should be issued and delivered to the building company all of the preferred stock and one-third of the common stock, ''in full satisfaction of any claims, heretofore accrued or hereafter to arise or accrue under the lease.'' The Bankruptcy Court approved the plan and ordered the same to be carried into effect.

The building company was also in default in the payments required by its trust deed to provide for a sinking fund.

On March 1, 1937, the building company filed its petition in bankruptcy, seeking a reorganization, and such proceedings were had that the court approved a plan which provided for an extension of the maturity date of the $400,000 of bonds, and a reduction of the rate of interest. As part of the final decree, the court directed the plaintiff to prosecute the present action against the defendant, James O. Mills, on his guaranty for the benefit of the bondholders of the building company. This statement of facts is drawn largely from the allegation of the plaintiff's petition.

The answer of the defendant, Mills, contains three defenses, the second alleging that all obligations which were ever due from Mills or the restaurant company to the Smythe Building Company have been fully paid. The third defense sets out the transactions as claimed by the defendant, and the new matter plead may be thus briefly summarized. It is alleged that the plan of reorganization proposed by the restaurant company under Section 77-B provided for the issuance and de-

livery to the building company of 1625 shares of the new preferred stock of the restaurant company, having a par value of $100 per share; and 500 shares of the common stock of the company without par value, "the same to be accepted by the Smythe Building Company in full payment of any and all claims which the Smythe Building Company had against the Mills Cleveland Restaurant Company for defaulted rent under the lease of March 22, 1932, including the defaulted rent which had been paid by the notes." It is alleged that pursuant to the order, the restaurant company carried out the plan of reorganization and delivered the stock which the building company accepted, "in full payment of all said claims."

It is further alleged that on July 20, 1937, the building company and the bank, as trustee, delivered to the restaurant company a release of said claim, and the court entered a decree approving the debtor's report, showing the performance and carrying out of said reorganization.

It is further alleged that on March 31, 1937, the building company filed its petition for reorganization; and that on June 30, 1937, the court entered an order approving the plan, and that on July 30, 1937, the court entered an order confirming the report showing the performance and carrying out of said plan of reorganization.

Appended to the bill of exceptions is a stipulation between the parties substantially in accordance with the statements made in the pleadings, except that there is no definite stipulation that the obligation for the unpaid rent was paid. It is recited under paragraph 9 of the stipulation that the balance of the rent due and payable on April 30, 1933, was $45,270.13, and that there was a certain amount due for steam heating, that "on account thereof on April 29, 1933, the Mills Cleveland Restaurant Company gave to the Smythe

Building Company its promissory note for the sum of $48,847.29; that on the books of the Mills Cleveland Restaurant Company appears the following notation, in respect to said note, 'balance due on April 30, 1933, was paid by note for $48,847.29, which note also included unpaid steam bills * * * in the amount of $3,577.68.' ''

Paragraph 10 stipulates that on December 1, 1936, the balance due for rent from May 1, 1933, to December 31, 1936, under the terms of the lease was the sum of $86,876; the exhibit attached to the stipulation discloses the ownership of the stock in the two corporations in the Smythe Building Company. Mills owns 500 shares of preferred and 998 shares of the common, there being two other shares of the common outstanding, and that, of the shares of the Mills Cleveland Restaurant Company, Mills owns 6000, and two others own 1000 shares respectively. On November 12, 1937, in the District Court of the United States in the case of the Smythe Building Company, Bankrupt, an order was entered modifying the decree of July 20, 1937, upon the application of an intervening bondholder by adding certain matters; among them being that the liability of J. O. Mills, ''if any,'' under the terms of his guaranty of the lease between the debtor and the Mills Cleveland Restaurant Company be preserved for the benefit of all the bondholders of the debtor and that the confirmation of the plan shall not be construed as releasing and discharging the liability of Mills. The same order authorizes the Central National Bank as successor-trustee to employ counsel for the purpose of prosecuting the claims of the trustee against Mills on the liabilities for the benefit of all the debtor's bondholders.

The plaintiff filed a reply to the amended answer, admitting certain allegations as to the execution of the lease, its assignment and pledge, and the default in payment of rental, and that on February 26, 1932, a

default existed in the sum of $31,250, and that on that date the restaurant company executed to the building company its promissory note in that amount; that on April 29, 1933, the restaurant company was in default in the sum of $48,847.29, and had not paid the note for $31,250, and that the restaurant company executed and delivered to the building company two notes in the respective amounts dated April 29, 1933; that both of the notes were in default on December 31, 1936, and that on that date the restaurant company filed its petition for reorganization; that the plan of reorganization provided for the issue of certain shares of stock which were subsequently issued; that on March 31, 1937, the building company filed its petition under Section 77-B. Certain other admissions are made and all other allegations are denied, except such as are admitted by the petition to be true. It thus appears that there is no admission of the allegation that the several notes were given "in payment" of the defaulted rent, upon which it is alleged the defendant, Mills, was liable by reason of his guaranty, as alleged in the answer.

Turning to the bill of exceptions which exhibits the statement of counsel, we find no admission in the opening statement of counsel for plaintiff that the amount due on defaulted rent was "paid" by the giving of the new notes, or by the order of the court.

Counsel for each side made extensive statements, asserting and denying claims of each.

We do not understand the rule to be that, in rendering a judgment upon the statement of counsel, any statement made by counsel in the interest of his client shall be accepted as true unless supported by evidence. Any admission against interest made by counsel may be considered by the court. It was stated that receipts were passed for the promissory notes in which it was stated that the notes were in payment of the indebted-

ness due to the defaulted rent.  We do not find any such receipts or any evidence supporting the claim, or any admission of such claim.  There is the naked statement of counsel, but this we do not understand to be sufficient to support the judgment of the court where that statement is made in the interest of the party represented by counsel and not admitted by opposing counsel.

It would not be profitable to recite at length the argument back and forth by the counsel and the court, except to say that statement of counsel can not be considered as evidence unless made against the interest of his client or acquiesced in by opposite counsel.

While the court rendered no opinion, the running discussion that appeared in the bill of exceptions indicates the grounds upon which the court rendered its judgment.  Among other things, the court stated: "You couldn't pursue the Smythe Building Company surely at this time, because there is no default in the bonds that you have; and as you can't pursue them, how are you going to pursue the guarantor?"  The court further queried: "If you can't pursue your principal, how are you going to pursue the guarantor?"  The court further stated: "I don't see how the trustee has any action on the guaranty until it is discovered that the bonds are not going to be paid.  It seems to me you go right straight back to the fundamental principle of law that you have no right of action against your principal, because there is no default in your bonds; therefore, how can you pursue on the collateral and the guarantor until you have default?  You can't get it past that."  The court further stated: "The point that you will have to make to this court, that I don't think you can convince me of—is the right of the trustee to bring any action against the guarantor until he defaults in the bonds."  It would be useless to continue further analysis of the court's

position as a basis for its decision. The question is, of course, whether or not the court was right or wrong.

Errors are assigned to the action of the court in granting the motion of the defendant to dismiss the petition and in overruling the motion of the plaintiff for judgment on statement of counsel and in overruling the motion for a new trial. Unusually excellent briefs have been filed by each party. It would be impossible within the proper length of an opinion to discuss in detail each proposition advanced and discussed in the briefs. Suffice it to say that the plaintiff claims a right to recover by virtue of a guaranty entered into by the defendant, Mills, whereby he agreed to be responsible for any unpaid rentals due under the terms of the lease.

The court below based its judgment upon the view that the trustee was without right to bring any action against the guarantor until there has been a default in the bonds for the payment of which the lease and the guaranty of the defendant had been pledged. At first glance we were impressed with the correctness of this view, but on further examination we have been led to seriously doubt it. Counsel for plaintiff state their contention substantially as follows: ''When a chose in action is pledged by way of assignment as collateral security for the pledgor's obligation, the pledgee has the privilege of enforcing it at its maturity against the obligor, whether the pledgor's obligation is then matured or not.'' In other words, it was contended by plaintiff that under the facts in this case the bank, as assignee, was not obliged to wait until there was a default in the debt due the bank, for the payment of which the lease and its accompanying guaranty had been deposited, before bringing suit. The obligation that Mills assumed was to guarantee any rent as soon as it was due and unpaid. It is urged by the plaintiff that it is not only the right of the assignee to pursue

the guarantor as soon as a default arises, but that it is his duty to do so. The assignee may exercise all the rights that may have accrued to the assignor by virtue of the default.

The plaintiff has called to the attention of the court a large number of cases which the court has examined, and finds most of them pertinent to the points under discussion.

The court will cite some of these cases. It may be said that some, especially those relating to the question of the obligation of pledgee to collect the securities pledged, are concerned with negotiable instruments, and the decision of the court frequently cites the statutes of the state relating to negotiable instruments.

However, we are unable to discover that even though some cases do relate to negotiable instruments pledges, that the principles are at all in variance with those which control where the pledge relates to a contract of guaranty.

Counsel for defendant have not cited a single case, but have contented themselves with an attempt to distinguish the cases cited by counsel for plaintiff.

We have considered their criticisms of the several citations, but find that in the main they are without merit, and that the principles we shall announce may be readily deduced from the cases cited below.

The court regrets that counsel for plaintiff have not cited any Ohio cases.

This court is necessarily more impressed with the decisions of our own Supreme Court than with those of other courts. We made independent search and are impressed with the principles announced in the case of *Henderson-Achert Lithographic Co.* v. *John Shillito Co.*, 64 Ohio St., 236, 60 N. E., 295, from which we quote the following, found on page 254 *et seq.*:

"It seems self-evident that the rights of the creditor

through subrogation to the remedies of the sureties can, in no case, exceed those of the latter, and that, until the indemnitor's covenant has been broken, or there has been some failure to perform it, no action can be maintained thereon by either. * * *

"There is an essential difference, in legal effect, between covenants of indemnity, strictly, that is, of indemnity against loss, and covenants to pay, or assume, or stand for, the debt, or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the failure to pay is a breach of the express terms of the covenant. While those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs. This distinction grows out of the express terms of the contract, and is well established by authority."

The court then quotes Justice Swayne, in *Wicker* v. *Hoppock,* 73 U. S. (6 Wall.), 94, 99, 18 L. Ed., 752, as follows:

"If the contract in the case before us were one of indemnity, the argument of the counsel for the plaintiff in error would be conclusive. In that class of cases the obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well settled distinction between an agreement to indemnify and an agreement to pay. In the latter case, a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid."

An interesting case is that of *Port* v. *Jackson,* 17 Johns (N. Y.), 239, wherein it is held that the agreement was substantially a covenant to pay the rent reserved, as it should accrue; that a plea of *non damnificatus* was bad, and that the assignor could recover

the amount of the rent in arrears as soon as a default occurred, without showing any injury to himself by the delinquency of the assignee.

This case is very apropos, but is too long and complicated for further quotation here.

We are of the opinion that the quotation from the *Henderson* v. *Shillito Co. case, supra,* is a clear statement refuting the position of the defendant, and demonstrating the fallacy of the court below.

When a chose in action is pledged by way of assignment as collateral security for the pledgor's obligation, the pledgee has the privilege of enforcing the chose at its maturity against the obligor thereon whether the pledgor's obligation is then matured or not. 21 Ruling Case Law, 666, Section 29; *Security-First Natl. Bank of Los Angeles* v. *Spring St. Properties,* 20 Cal. App. (2d), 618, 67 P. (2d), 720, 725; *Nelson* v. *Eaton,* 26 N. Y., 410, 413; *Schlieman* v. *Bowlin,* 36 Minn., 198, 30 N. W., 879.

We are of the opinion that the fact that the bonds issued by the building company for the payment of which the ninety year lease and the sub-leases were deposited as security have not been in default, furnishes no good reason why the assignee may not pursue the guarantor, as the obligation of the guarantor may arise through the default in the payment of the rent by his principal.

We, therefore, arrive at the conclusion that so far as the judgment of the court below is based upon the claim that suit may not be maintained, so long as the bonds are not in default, it is erroneous; and that we must search for some other reason why the action may not now be maintained.

The defendant has asserted that the debt arising out of the nonpayment of the interest has been paid and discharged by virtue not only of the order of the Bankruptcy Court, but also by virtue of the action of

the parties themselves, including the assignee. It is possibly true that if the debt was paid and discharged by the giving of new notes, so that the debt does not longer exist, that the obligation of the guarantor may not be enforced. It is claimed, first, that the bankruptcy proceeding itself involved a plan offered by the restaurant company for a payment of its rent obligation, and that, therefore, the guarantor may not be held. We must not overlook the fact that under the Bankruptcy Act itself the discharge of the principal does not discharge the obligation of the guarantor. *Union Trust Co. of Rochester* v. *Willsea,* 275 N. Y., 164, 9 N. E. (2d), 820.

Section 16*a* of the Bankruptcy Act provides the liability of a person who is a co-debtor with, or guarantor of, or in any manner a surety for a bankrupt shall not be altered by the discharge of such bankrupt. It, therefore appears to us, even if the bankruptcy proceeding relieved the restaurant company from the payment of its defaulted rent, it did not act as a release of the obligation of Mills under his contract of guaranty. Our judgment upon this point, outside of the effect of the statute itself, is strengthened when we consider that the purpose of the Bankruptcy Act is to discharge the debtor from the obligations which, due to his particular circumstances, the court may find he is unable to pay. If that debtor has a perfectly solvent guarantor or surety, we see no reason why the debtor's discharge in bankruptcy should deprive the creditor of the benefit of the security he has taken, possibly for the very reason that the principal debtor was of doubtful financial responsibility.

To relieve the guarantor of his responsibility by virtue of the fact that the debt of his principal may have been paid, it is necessary that the discharge of the principal obligation should arise from the voluntary act of the parties. If it is by reason of an in-

voluntary court action, there is not such a discharge of the debt as will relieve the guarantor from his obligation.

It is asserted and reasserted in the brief of counsel for defendant that the old leases were wiped out and the back rents were paid and that new stock was issued and accepted by the company as payment and that there was no existing obligation upon which the defendant was a guarantor. We have searched the record in our attempt to find anything that sustains the allegation of defendant as set out in the third defense to the effect that the Smythe Building Company and The Ohio Central National Bank, as trustee, the plaintiff herein, executed and delivered to the restaurant company a release of such claim. It might be conceded that if all parties and interests, including the holders of the bonds, had voluntarily entered into an agreement to cancel the claim, such an agreement would release the guarantor. But it must also be conceded that if the realty company had assigned the lease, together with the guaranty of Mills to secure the bonds, no action upon the part of Mills and the realty company could deprive the bank of the security which it had received by virtue of the pledge of the lease and of the guaranty. Especially is this true where it must have been known to both the guarantor and the realty company that the lease had been pledged as security for an obligation of the realty company. When the collateral passed out of the control of the realty company and into the control of the trustee with the knowledge of the guarantor, all power to vary the terms of the guaranty without the consent of the assignee, ceased. In spite of the very ingenious argument of the defendant, we arrive at the conclusion that if, as alleged in petition and not disputed, the defendant became liable as a guarantor for the payment of the rent of the restaurant company to the

realty company, and such lease was assigned as collateral security for the debt of the realty company the obligation to pay under the guaranty may be enforced by the assignee, in spite of the fact that the bonds for which the lease was assigned as security have not defaulted, and in spite of the fact that the plan submitted in the bankruptcy case contemplated the issuance of new obligations in payment of, or rather in exchange for, prior existing obligations.

We also arrive at the conclusion that the allegations made in the third defense of the defendant's answer have not been sustained, as no evidence was offered and no admissions made that the trustee bank agreed to the payment of the obligation, upon which the defendant was guarantor, by the issuance of new notes or of the stocks of the corporation. It appears to us that the case stands clearly as one on which the defendant, having been liable, is still liable for the defaulted rent and that this liability may be enforced by a proper action by the trustee, which is the assignee of the company to whom the obligation was originally given.

We recognize the fact that upon the trial of this case it may be proven that the debt arising out of the defaulted rent, and upon which the defendant admits he was once liable, have been paid and discharged so as not to be the basis of an action to recover under the guaranty.

However, we think from the showing made upon the pleadings, the admission of counsel, and upon such evidence as was introduced, that there was no basis for a judgment of the court sustaining the motion of the defendant for judgment.

We cite on the several propositions the following cases, in addition to those we have just commented upon:

1. The liability of a guarantor or surety is in no

way diminished because the principal debtor is discharged in bankruptcy. Sec. 16 (a) National Bankrupt Act; *Union Trust Co. of Rochester* v. *Willsea, supra.*

2. The creditor's and the trustee's receipt of new stock under the reorganization plan of the restaurant company did not discharge the defendant's liability as guarantor of the payment of rent then delinquent. Gilbert's Collier on Bankruptcy (4 Ed.) 347, n.; *B. M. C. Durfee Trust Co.* v. *Steiger,* —Mass., —, 4 N. E. (2d), 1014; *Cumberland Glass Mfg. Co.* v. *DeWitt,* 237 U. S., 447, 59 L. Ed., 1042, 35 Sup. Ct., 636; *McClintic-Marshall Co.* v. *City of New Bedford,* 239 Mass., 216, 131 N. E., 444; *In re-American Paper Co.,* 255 F., 121; *Bromberg* v. *Self,* 16 Ala. App., 627, 80 So., 631; *Dunham Bros. Co.* v. *Colp,* 125 Me., 211, 132 A., 388; *Guild* v. *Butler,* 122 Mass., 498, 23 Am. Rep., 378; *National Mt. Wollaston Bank* v. *Porter,* 122 Mass., 308; *Eastern Furniture Mfg. Co.* v. *Caminez,* 146 App. Div., 436, 131 N. Y. Supp., 157; *Klipstein and Co.* v. *Lipschitz,* 130 Misc., 291, 223 N. Y. Supp., 822; *Martin Furniture Co.* v. *Massey,* 135 Tenn., 338, 186 S. W., 451.

*Judgment reversed and cause remanded.*

Hornbeck, P. J., and Barnes, J., concur.