O'BRIEN et al., Appellees,

v.

RAVENSWOOD APARTMENTS, LTD., et al.; Brauer et al., Appellants.

[Cite as *O'Brien v. Ravenswood Apts., Ltd.,* 169 Ohio App.3d 233, 2006-Ohio-5264.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050713.

Decided Oct. 6, 2006.

234

Beckman Weil Shephardson, L.L.C., Brian R. Redden, and Richard Hopple, for appellees.

Dinsmore & Shohl, L.L.P., Mark A. Vander Laan, and Bryan E. Pacheco, for appellants.

HILDEBRANDT, Presiding Judge.

{¶ 1} In this appeal, we must decide whether the trial court erred in enforcing an agreement that unconditionally guaranteed the obligations of a vendee under a land installment contract. We hold that the trial court properly enforced the guaranty and awarded damages for past breaches. But the trial court erred in

declaring the guarantor liable for future breaches, because the vendor sued upon an installment contract and chose not to accelerate the contract.

## The Facts

{¶ 2} Plaintiff-appellee James F. O'Brien, acting as a trustee, is the vendor of real property known as the Ravenswood Apartments, located at 3387, 3397, 3407, and 3417 Erie Avenue. The trust benefits plaintiffs-appellees Roger S. Corbly and Glen A. and Carol Burns. We collectively refer to all the plaintiffs-appellees as O'Brien.

{¶ 3} Defendant Ravenswood Apartments, Ltd., is an Ohio limited-liability company. Ravenswood is the vendee of the premises under a land installment contract ("LIC"). Defendants-appellants John C. Brauer, Cynthia Brauer, Hisham Shtayyeh, and Souhad Shtayyeh guaranteed the LIC. Therefore, they are each guarantors of the LIC, and we refer to them collectively as the guarantors.

{¶ 4} Ravenswood and O'Brien entered into the LIC for the purchase of the premises on November 1, 1996. The LIC provided that Ravenswood would pay a total purchase price of $3,415,000 under the following terms: a down payment of $92,437.50; the balance of $3,322,562.50 to be paid in monthly installments of $26,734.09 per month from December 1, 1996, through December 1, 1998, and $27,206.47 from January 1, 1999, through November 1, 2020; and the remaining balance of $1,093,286.15 to be paid on November 1, 2020.

{¶ 5} The LIC also provided that the payments would include interest at the rate of nine percent and that the balance of the purchase price could not be prepaid in full or part before November 1, 2020. After full payment, O'Brien would convey the property to Ravenswood by a general warranty deed.

{¶ 6} In addition to paying principal and interest, Ravenswood agreed to escrow with the vendor each month 1/12 of the total annual insurance premiums due and 1/12 of the annual real estate taxes due. Finally, Ravenswood agreed to maintain a $5,000,000 umbrella insurance policy covering the premises and to provide to the vendor complete copies of the insurance policies and binders covering the premises.

{¶ 7} Contemporaneously with the execution of the LIC, the guarantors entered into a guaranty agreement, "unconditionally" guaranteeing to O'Brien "the prompt performance of each and every obligation or liability" of Ravenswood, "including but not limited to, payment of all principal, interest, and other sums due under the land contract, whether by acceleration or otherwise, together with all late charges, disbursements, expenses, and deficiencies." The contract further provided, "This Guaranty shall be construed as an absolute and unconditional guaranty of performance and the GUARANTOR'S liability shall be direct, immediate, and not conditional or contingent upon the pursuit by [O'Brien] of any

remedies it may have or the requirement to resort first to any collateral or security. * * * The obligations of the GUARANTOR hereunder shall not be released, discharged or in any way affected nor shall the GUARANTOR have any rights against [O'Brien] by reason of: (a) the fact that any collateral or security, securing any obligation of [Ravenswood] or of the GUARANTOR hereunder, may be subject to equitable claims or defenses in favor of others or may be invalid or defective in any way; * * * (c) the invalidity or unenforceability for any reason of any obligation or liability of [Ravenswood]; (d) the change, loss, or deterioration in value of any collateral or of the financial condition of [Ravenswood] whether due to incorrect estimates of such value or financial condition, failure to protect or insure, or because of any other reason; * * * or (f) any other defense in law or equity to which the GUARANTOR may be entitled." The contact also provided O'Brien with the ability to "release, compromise, or settle any such obligation [of Ravenswood] in settlement, liquidation, adjustment, bankruptcy proceedings or otherwise as [O'Brien] deems advisable."

{¶ 8} In March 2003, O'Brien, Ravenswood, and the guarantors began disputing certain issues that ultimately became a part of this litigation. O'Brien allegedly refused Ravenswood's request to assign its interest in the LIC to defendant Woods of Hyde Park, L.L.C., and later challenged the action of Ravenswood's members to transfer a portion of the membership interest to Woods and defendant Erie East, L.L.C. O'Brien also accused Ravenswood of failing to properly insure and maintain the premises. Ravenswood claimed that O'Brien's actions constituted harassment that interfered with its quiet enjoyment of the property.

{¶ 9} O'Brien originally filed a verified complaint in April 2004 against Ravenswood and the guarantors for breach of the LIC, breach of the guaranty, and a wrongful attempt to transfer an interest in the LIC without O'Brien's permission. O'Brien filed an amended verified complaint in July 2004, adding several new defendants and claims.

{¶ 10} In July 2004, Ravenswood filed a voluntary petition for relief under Chapter 11, U.S.Code in the Bankruptcy Court for the Southern District of Ohio. Ravenswood's obligations under the LIC were stayed pursuant to bankruptcy statutes,[1] but Ravenswood began making partial payments to meet its obligation under the LIC in October 2004. Ravenswood has retained possession of the premises.

{¶ 11} When the guarantors refused to make the monthly installment payments, O'Brien moved for partial summary judgment against the guarantors on the breach-of-guaranty claim. He sought to recover from the guarantors

---

1. Section 362, Title 11, U.S.Code.

amounts that Ravenswood had failed to pay under the LIC and also sought a declaration that the guarantors would have to pay any deficiency that Ravenswood owed each month under the LIC. Additionally, he sought to have the guarantors produce certain documents that were required under the guaranty.

{¶ 12} O'Brien's motion was supported by the affidavit of Roger Corbly, who had been designated as the seller's representative for accepting payments under the LIC. Corbly averred that as of May 11, 2005, Ravenswood owed $163,735.73 in principal and interest under the LIC. He acknowledged that Ravenswood had made partial direct payments to the mortgagee of the property under an agreed entry in its Chapter 11 bankruptcy proceeding, leaving an unpaid monthly balance for principal and interest of $9,289.92. He also averred that Ravenswood had defaulted on its $2,269.52 monthly property tax escrow and its $2,814.83 monthly insurance escrow. Ravenswood owed $23,829.96 for the former and $40,805.45 for the latter, plus interest and late fees. Corbly claimed that the total amount that would be owed each month under the LIC after Ravenswood's direct payment would be at least $14,374.27. He supported his affidavit with records that he had maintained regarding the LIC.

{¶ 13} In opposing summary judgment, the guarantors did not challenge the fact that Ravenswood had failed to make the full monthly installment payments for principal and interest as set out in the LIC, but they did attempt to challenge O'Brien's claim for damages based upon the failure to make the escrow payments. The guarantors claimed that the LIC did not require the escrow payments or, alternatively, that Ravenswood had actually made the payments and was not in default.

{¶ 14} Additionally, the guarantors raised several defenses to their liability, including that Ravenswood's obligations under the LIC had been altered, thereby altering their obligation as guarantors to an amount less than the full value of the LIC. They also argued that O'Brien's failure to recognize the alteration in the guarantors' obligations and his pursuit of the full value of the LIC amounted to a breach of the duty of good faith and fair dealing. This breach either eliminated the liability under the guaranty entirely or caused damages that should have been set off against the guarantors' liability. They also raised some of these defenses in counterclaims.

{¶ 15} The guarantors advanced two grounds for the alteration of their obligations. First, they claimed that by virtue of R.C. Chapter 5313, the LIC had been transformed into a mortgage. R.C. Chapter 5313 regulates the business relationship between a vendor and a vendee of residential real estate pursuant to a land installment contract. According to the guarantors, because of this transformation, O'Brien could not sue for the monthly installments but had to foreclose on the property or accelerate the payments and terminate the LIC. In

either case, O'Brien could not recover a deficiency judgment from Ravenswood. The guarantors claimed that their obligation was therefore reduced to an amount less than the full value of the LIC.

{¶ 16} In their verified answer and counterclaim, they alleged that they had offered to pay O'Brien this reduced amount, which did not include the present value of interest installments through the year 2020.

{¶ 17} Second, they argued that their obligation had been altered because of Ravenswood's pending bankruptcy reorganization plan. According to the guarantors, upon the bankruptcy court's confirmation of Ravenswood's plan of reorganization, O'Brien would be paid in full under the contract, releasing the guarantors from any further obligation. The guarantors filed with the trial court documents from the bankruptcy court indicating that Ravenswood might be paying a lump sum to O'Brien in settlement to discharge its debt under the LIC and to gain full title to the property.

{¶ 18} In an order containing a Civ.R. 54(B) certification, the trial court held that the guarantors were liable for damages to the extent that Ravenswood had defaulted under the LIC. The court agreed with the guarantors that the LIC was governed by R.C. Chapter 5313, but held that the guarantors had waived the right to raise the antideficiency protections of R.C. Chapter 5313 as a defense. The court held also that Ravenswood's discharge in bankruptcy would not discharge the guarantors as a matter of law. The court ordered the guarantors to pay all sums owed by Ravenswood as of the date of judgment, implicitly rejecting all the guarantors' defenses. The court also ordered the guarantors to make future payments and to provide net-worth statements to O'Brien as required by the guaranty. The guarantors then filed this appeal, raising three assignments of error.

## Liability of a Guarantor

{¶ 19} The guarantors entered into an agreement with O'Brien unconditionally guaranteeing the performance of Ravenswood, the principal debtor. This agreement gave them suretyship status and the rights associated with that status, to the extent that these rights were not altered by contract.[2]

{¶ 20} A surety's secondary obligation exists only as long as the principal debtor owes performance of the underlying obligation.[3] Thus, in general, when the obligation of the principal debtor is extinguished in an amount

---

2. See, generally, Restatement of the Law 3d, Suretyship and Guaranty (1996), Section 1 and accompanying comments and illustrations.

3. See, generally, Restatement of the Law 3d, Suretyship and Guaranty (1996), Section 1.

less than what was owed, the obligation of the surety is also extinguished, unless the surety consents to continued liability [4] or the creditor expressly preserves the surety's right of recourse against the principal debtor.[5] But the discharge of the principal obligation must arise from the voluntary acts of the parties. Therefore, the discharge of a principal in bankruptcy does not affect the liability of the surety for the debt.[6] Additionally, the automatic-stay provision of the bankruptcy code does not stay the obligation of a nondebtor surety.[7]

{¶ 21} When sued under a surety agreement, a surety is typically entitled to raise the nonpersonal defenses of the principal debtor.[8] "Otherwise, the principal would be indirectly deprived of the benefit of a valid defense against the creditor, by being compelled, in effect, to respond through his sureties; or the sureties could be deprived of their right to reimbursement from the principal, and thus one or the other be compelled to lose the rights which the law had secured to them." [9] But a guarantor can waive its right to raise the legal defenses of the principal.[10]

{¶ 22} A guarantor can defend against enforcement of a guaranty where the creditor has impaired the guarantor's suretyship status.[11] But a guarantor may waive his own suretyship defenses.[12]

{¶ 23} Ultimately, a guarantor's liability, like a surety's, is governed by

---

**4.** See *Bank One, Akron, N.A. v. Smart–Tomlinson Corp.* (1988), 56 Ohio App.3d 60, 61–62, 564 N.E.2d 1093.

**5.** See, generally, Restatement of the Law 3d, Suretyship and Guaranty (1996), Section 38; *Banana Sales Corp. v. Chuchanis* (1928), 119 Ohio St. 75, 162 N.E. 274.

**6.** See *Gosiger, Inc. v. Collinsworth* (Mar. 23, 1989), 2nd Dist. No. 88–CA–79, 1989 WL 27194; *Central Natl. Bank v. Mills* (1939), 62 Ohio App. 413, 427–428, 16 O.O. 127, 24 N.E.2d 607.

**7.** See *Wampum Hardware Co. v. Keffler* (May 8, 1992), 7th Dist. Nos. 88 C.A. 206 and 91 C.A. 172, 1992 WL 102826.

**8.** See *Mut. Fin. Co. v. Politzer* (1970), 21 Ohio St.2d 177, 183–184, 50 O.O.2d 397, 256 N.E.2d 606.

**9.** Id. at 184, 50 O.O.2d 397, 256 N.E.2d 606, quoting *State, ex rel. Commrs. of Knox Cty. v. Blake* (1853), 2 Ohio St. 147, 151.

**10.** See, generally, *Politzer* at 185, 256 N.E.2d 606; *Buckeye Fed. S. & L. Assn. v. Guirlinger* (1991), 62 Ohio St.3d 312, 316, 581 N.E.2d 1352.

**11.** See Restatement of the Law 3d, Suretyship and Guaranty (1996), Section 37.

**12.** See *Fausz v. Gioia*, 6th Dist. No. WM–05–008, 2006-Ohio-2487, 2006 WL 1363893; Restatement of the Law 3d, Suretyship and Guaranty (1996), Section 48.

the terms used in the contract.[13] The guaranty agreement is interpreted as any other contract under Ohio law.[14] If a guaranty's terms are clear and unambiguous, a court may not construe it to have another meaning.[15]

## The First and Second Assignments of Error

{¶ 24} In their first and second assignments of error, the guarantors argue that the trial court erred in entering summary judgment against them for breach of the guaranty. We hold that these arguments are meritless.

{¶ 25} We review a grant of summary judgment de novo.[16] O'Brien was entitled to prevail on his summary-judgment motion only if (1) there was no genuine issue of material fact, (2) he was entitled to judgment as a matter of law, and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion was adverse to the party opposing the motion.[17]

## Breach of the Guaranty

{¶ 26} O'Brien sued the guarantors for Ravenswood's default on an installment contract. The installment contract required Ravenswood each month to make principal and interest payments and to escrow 1/12 of the annual real estate tax and insurance obligations. O'Brien presented Corbly's affidavit to establish that Ravenswood had defaulted on these obligations and that the guarantors had failed to cure Ravenswood's defaults. O'Brien also demonstrated to the trial court that the guarantors had failed to present personal net-worth statements as required by the guaranty.

{¶ 27} In opposition, the guarantors generally challenged Corbly's averment that Ravenswood had defaulted on the escrow payments, but they never presented any evidence to contradict the affidavit. Counsel's unsworn statement in a brief was not evidence.[18] Therefore, O'Brien established the breach of the guaranty for failure to pay the monthly installment for principal and interest, failure to make the escrow payments, and failure to present the documents required under the guaranty.

---

13. See *Morgan v. Boyer* (1883), 39 Ohio St. 324, paragraph two of the syllabus.

14. See *Stone v. Natl. City Bank* (1995), 106 Ohio App.3d 212, 217, 665 N.E.2d 746.

15. Id.

16. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

17. See Civ.R. 56(C).

18. See Civ. R. 56(C) and (E).

### Guarantors' Affirmative Defenses

{¶ 28} The guarantors advance several arguments challenging the trial court's entry of summary judgment on the breach-of-guaranty claim. First, they claim that the protections of R.C. Chapter 5313, which, they assert, prohibit a deficiency judgment, apply as a matter of law to their obligation and preclude O'Brien's action for the installment payments. Second, they claim that O'Brien materially breached the LIC, discharging both Ravenswood's primary duty to perform and their derivative duty to perform. Third, they claim that upon the bankruptcy court's confirmation of Ravenswood's plan of reorganization, O'Brien will be paid in full under the contract. Fourth, they allege that O'Brien breached an obligation not to deal with the debtor or with any security for the debt in a manner that would harm their interest by refusing to consent to Ravenswood's assignment of its interest in the LIC. Finally, they claim that O'Brien breached the duty of good faith and fair dealing by refusing to accept a payoff of the LIC. But O'Brien maintains that these defenses were barred by the unconditional and absolute guaranty.

{¶ 29} As we have already noted, a guaranty is a contract, and an unconditional guaranty is enforceable where the terms are clear and unambiguous. Further, a guarantor cannot assert defenses that he has expressly waived. By signing the guaranty, the guarantors forfeited their right to raise defenses and claims based upon "the invalidity or unenforceability for any reason of any obligation or liability" of Ravenswood and "any other defense in law or equity to which" the guarantors "m[ight] be entitled." The guarantors also provided O'Brien with the ability to "release, compromise, or settle" the obligation of Ravenswood in bankruptcy proceedings. Also, the guarantors agreed that their liability would be "direct, immediate, and not conditional or contingent upon the pursuit by [O'Brien] of any remedies it may have [had] or the requirement to resort first to any collateral or security." The guarantors do not challenge the voluntariness of these waivers.

### Antideficiency Defense

{¶ 30} In light of this clear waiver language, we hold that the guarantors were precluded from raising any defenses under R.C. Chapter 5313. Because this chapter of the Revised Code protects the vendee in a LIC, and not a guarantor, we can find no reason that would prevent the enforcement of this waiver language in an unconditional guaranty.

{¶ 31} Even if there was no waiver, we are not convinced that the antideficiency provisions of R.C. 5313.07 and 5313.10 would have prevented summary judgment. O'Brien was not seeking possession of the premises or cancellation of the LIC. He was seeking to have the guarantors perform under the guaranty,

an action not governed or prohibited by these statutes. Thus, the guarantors could not use the protections of R.C. Chapter 5313 to avoid their liability under the guaranty.

## Ravenswood's Defenses

{¶ 32} Likewise, the guarantors were precluded from raising Ravenswood's defenses to avoid performance, where they waived the right to do so in the guaranty. The guaranty clearly provided that the guarantors' obligations were not affected by "the invalidity or unenforceability for any reason of any obligation or liability" of Ravenswood.

## Ravenswood's Pending Discharge in Bankruptcy

{¶ 33} Next, we hold that the guarantors could not assert as a defense to summary judgment the fact that a future order from the bankruptcy court might provide O'Brien with compensation under the LIC. It was undisputed at the time of summary judgment that the bankruptcy court had not yet confirmed Ravenswood's discharge plan. The trial court correctly recognized the surety relationship between Ravenswood and the guarantors when it held the guarantors liable only to the extent that Ravenswood had defaulted. The discharge of Ravenswood from the debt in bankruptcy would not, as a matter of law, discharge the guarantors, unless O'Brien expressly agreed to such a discharge. Thus, the effect of Ravenswood's discharge on the obligation of the guarantors could not be decided until the discharge was final.

## Impairment–of–Suretyship–Status Defense

{¶ 34} Now we address whether O'Brien's alleged refusal to allow Ravenswood to transfer an interest in the LIC altered the guarantors' obligation and precluded summary judgment. Essentially, the guarantors are arguing that O'Brien impaired their suretyship status and altered the risk they assumed as guarantors by increasing the likelihood of Ravenswood's insolvency.

{¶ 35} We hold that the guarantors waived this defense, because the guaranty provided for liability on Ravenswood's obligations irrespective of "the change, loss, or deterioration in value of any collateral or of the financial condition of [Ravenswood] whether due to incorrect estimates of such value or financial condition, failure to protect or insure, or because of any other reason."

## Breach of Duty of Good Faith and Fair Dealing

{¶ 36} Additionally, the guarantors' defense based upon O'Brien's breach of an implied duty of good faith and fair dealing did not prevent summary judgment. The duty of good faith and fair dealing, implied in every Ohio contract, requires

honesty and reasonableness in the enforcement of a contract.[19] The guarantors claim that O'Brien's refusal to accept the lump-sum payment to terminate the LIC breached this duty, precluding summary judgment on the breach-of-guaranty claim. They also claim that the duty to act reasonably cannot be waived under Ohio law.

{¶ 37} The strong public policy that has resulted in the recognition of an implied covenant of good faith and fair dealing applies equally to our determination of a party's waiver of the covenant. We hold that the guarantors did not waive the right to raise the duty of good faith and fair dealing as a defense in the guaranty, where the parties did not expressly adopt a freely negotiated provision providing for such a waiver.

{¶ 38} But the guarantors could not avoid summary judgment with this defense, because they failed to raise a genuine issue of material fact concerning whether O'Brien breached a duty of good faith and fair dealing. O'Brien could not have breached this duty as a matter of law by refusing a lump-sum payoff when the guarantors were only willing to pay an amount less than the total due under the LIC reduced to present value, and when the LIC expressly provided that the contract could not be prepaid before November 1, 2020. O'Brien merely demanded that the guarantors perform their obligations under the guaranty.

{¶ 39} Finally, we reject the guarantors' claim that the trial court's judgment disregarded the well-settled proposition of law that a guarantor is entitled to assert a setoff or counterclaim against its liability under a guaranty. In our view, the guarantors have misinterpreted the trial court's decision. The court did not hold that the guaranty prohibited all setoffs and counterclaims; rather the court held that based upon the evidence and the arguments of the parties, O'Brien had demonstrated that he was entitled to judgment as a matter of law.

{¶ 40} Under the express terms of the agreement, the guarantors agreed to meet all the obligations of Ravenswood under the LIC. The defenses the guarantors raised to avoid summary judgment were either waived or not supported by sufficient evidence. Thus, the trial court did not err in granting summary judgment to O'Brien on the breach-of-guaranty claim. The first and second assignments of error are overruled.

### Third Assignment of Error

{¶ 41} In their final assignment of error, the guarantors argue that the trial court erred to their prejudice when it entered a prospective judgment against them. They specifically challenge paragraph four of the judgment entry, which

---

19. See *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, at ¶ 27.

orders the guarantors to pay $228,371.14 plus pre- and postjudgment interest and further orders that this amount "shall increase by $14,374.27 per month until either Ravenswood or Guarantors resume full payments under the LIC."

{¶ 42} We hold that the trial court erred in entering this prospective judgment. Generally, contracts payable in installments are divisible in nature so that each default in payment may give rise to a separate cause of action.[20] Thus, the breach of an installment-payment contract by nonpayment is not a total breach of the contract. A seller can avoid this rule by including an acceleration clause in the contract and requiring the obligor to pay the entire balance upon default.[21]

{¶ 43} The LIC and guaranty agreements at issue in this case contained acceleration clauses. But O'Brien did not seek acceleration and termination of the LIC; he sought primarily to continue the contract and to enforce the guarantors' payment of the monthly installments as required under the LIC and the guaranty. O'Brien cannot recover for future breaches of the duty to make installment payments until they have occurred. The third assignment of error is sustained.

{¶ 44} Therefore, we reverse that part of the trial court's judgment that awards prospective damages. In all other respects, the judgment is affirmed.

Judgment affirmed in part<br>and reversed in part.

GORMAN and PAINTER, JJ., concur.

---

**20.** See *Eden Realty Co. v. Weather–Seal, Inc.* (1957), 102 Ohio App. 219, 223–224, 2 O.O.2d 238, 142 N.E.2d 541.

**21.** See *Citizens Bank v. Marzano,* 4th Dist. No. 04CA4, 2005-Ohio-163, 2005 WL 103165, at ¶ 16.