### In re RICE LEGHORN FARM, Inc.
### No. 2148.

United States District Court
W. D. Missouri, Central Division.
July 27, 1953.

904

Henry G. Eager, Henry I. Eager, Kansas City, Mo., Harold L. Harvey, St. Louis, Mo., for debtor.

John B. Gage, Kansas City, Mo., trustee, Haysler A. Poague, Clinton, Mo., for trustee.

Granoff, Levy & Craig, Kansas City, Mo., Charles M. Lee, Sidney B. McClanahan, St. Louis, Mo., Agency Counsel R. F. C., Ingraham D. Hook, R. F. C., Kansas City, Mo., for petitioning creditors.

REEVES, Chief Judge.

The secured creditor, namely Reconstruction Finance Corporation, has entered vigorous objections to the allowance of fees of any kind to the above officials and attorneys who were active in an endeavor to rehabilitate the above named corporation under Chapter X of the Bankruptcy Law (for more convenient reference, sections 501 to 676, inclusive, Title 11 U.S. C.A.), and particular attention is called to the provisions of section 641 of said Title 11, supra, and succeeding sections. Section 641 specifically provides that, in such cases:

"The judge may allow reimbursement for proper costs and expenses incurred by the petitioning creditors and reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter—

\* \* \* \* \* \*

"(3) by the trustee and other officers, and the attorneys for any of them;

"(4) by the attorney for the debtor; and

"(5) by the attorney for the petitioning creditors.

"Such compensation of \* \* \* trustees shall not be governed by sections 68 and 76 of this title."

The latter two sections prescribe fees, percentages, and other compensation for trustees in bankruptcy. Clearly they would not be properly applicable in corporate reorganization cases, as in this case, and therefore Congress has specifically exempted corporate reorganizations from the application of such sections.

The reason urged by Reconstruction Finance Corporation for its resistance to such allowances is that it has objected throughout the entire proceeding to any effort on the part of creditors and others to reorganize the debtor. It has even challenged the right of the court to entertain the proceeding in involuntary bankruptcy in view of the fact that it is a secured creditor and that its mortgages, chattels and real, cover practically all of the assets of the debtor. Its several mortgages exceed $400,000. Its claim arises from loans made to the debtor from time to time and for expenses incurred by it when the property was taken over preliminary to a foreclosure. Such a proceeding was threatened or had been instituted at the time of the intervention in bankruptcy and it contends that it was not benefited by bankruptcy but, on the other hand, was seriously damaged by such proceeding. It says now that its vested interest should not be impinged or encroached upon by expenses in a proceeding which it has strenuously opposed, and particularly since such compensation and expenses are to be paid out of the proceeds of the sale of property over which its mortgage liens attach.

The claimants contend that the petition in bankruptcy was not only filed in good faith but that the rehabilitation of the debtor was both desirable and feasible and

that the proceedings have resulted in great benefit to the secured creditor, and that, but for its objections, a plan of reorganization could have been made effective and that all parties would have benefited by such corporate reorganization.

It appears from the undisputed testimony that when involuntary bankruptcy intervened the debtor not only had extensive property holdings but that it had for several years been engaged in the chicken hatchery business and had enjoyed prosperity, or the appearance of prosperity, not only because of the favorable opportunities at that time for its business but also because of the large sums of money made available to it by the secured creditor.

In reliance upon such appearance, many persons and corporations extended liberal credit to the debtor. With its large amount of assets, and with a business that appeared then to be attractive, the unsecured creditors of the debtor believed, with reason, that, through bankruptcy and corporate reorganization, as above suggested, the amount of their debts could either be recovered in full or in part. A trustee was appointed on February 27, 1950. Immediately upon his appointment he inquired concerning the status of the debtor.

It required time and study to determine what equities existed in the mortgaged property and what assets were free of any lien asserted by the secured creditor. The Reconstruction Finance Corporation was the only secured creditor. With the aid of this creditor, the trustee marshalled the assets and evaluated them for reorganization purposes and for a successful operation of the hatchery. The trustee found a large amount of surplus property. Under his leadership, and with the full concurrence and approval of the secured creditor, sales were made of both real estate and personal property not useful in the operation of a going hatchery business. Such sales were advantageously made and fair prices realized. In no instance was property sacrificed because of a distressed or forced sale.

When the trustee took charge the entire property, including the free assets, was in the hands of the secured creditor, which was then sustaining heavy losses by reason of expenses far beyond any operating income. All the assets had been and were falling into decay and obsolescence. The secured creditor was fortunate in having the property taken off its hands. It was not in a position to handle or manage the business. Notwithstanding this fact, the secured creditor made objections to the proceeding and insisted upon the recognition of its claimed superior technical right as a secured creditor. It had no concern for the general creditors or for the possibility of a reorganization of the corporation in the interest of the public and in the interest of general creditors and the debtor itself. It wanted to realize whatever it could out of a forced and a sacrificial or quick sale of the assets of the debtor.

During the proceedings for corporate reorganization several plans were submitted. All were approved by the debtor, by the petitioning and other general creditors, and their approval by the court was recommended by the trustee and his counsel. The business in which the debtor had been engaged was not at that time favored by economic conditions. Notwithstanding this fact, the trustee realized a profit from his operations and at the same time rehabilitated the property or assets and maintained the debtor as a going concern. The secured creditor continued to object notwithstanding the benefits which overwhelming and undisputed testimony showed it had received from the trustee's operations.

It is interesting to note that the object and purpose of the Reconstruction Finance Corporation, as an agency of the government, as outlined in Section 604, Title 15 U.S.C.A., was and is:

"To aid in financing agriculture, * * * to encourage small business, to help in maintaining the economic stability of the country, and to assist in promoting maximum employment and production * * *."

The operation of the trustee in this case had the salutary benefit of furnishing employment in an agricultural community and maintaining a market for farmers' produce in the same community. It probably is true that the original loan made by the secured creditor was excessive and out of line with

congressional purposes in creating the agency. Nevertheless, when the obligation was created and the matter came into court, it seemed proper to rehabilitate the debtor and set it on its course in accordance with the congressional purpose. All of the evidence in the case indicated that, if the secured creditor had been co-operative, there would have accrued to it an additional benefit as well as tremendous benefit to the general creditors and to the community where the business was being operated.

Moreover, free assets of the debtor were used by the trustee largely in rehabilitating and restoring property covered by the secured creditor's mortgages. All of the applicants, namely, the trustee, his counsel, attorneys for the petitioning creditors, and attorneys for the debtor, have rendered invaluable service in a proceeding which was of tremendous benefit, according to the undisputed testimony, to the secured creditor and, but for its objections, would have enabled the unsecured creditors to have realized a large percentage, if not all, of their claims.

In addition to this, at the instance of the secured creditor, an order was made on June 5, 1953, directing a dismissal of the proceeding for reorganization and by that order the trustee was instructed to turn back to the secured creditor all of the assets covered by its mortgage as there appeared to be no equity in said property without corporate reorganization. The secured creditor approved this order in toto. It contained, among others, the following recital:

"* * * subject to the payment of outstanding Trustee's Certificates and such compensation for all services rendered and obligations incurred in this proceeding, and the costs and expenses of this proceeding, all as may be fixed or allowed by the Judge herein, the Trustee being further directed to first apply to such payments all moneys now or to come into his hands from the winding up of the operations of said Debtor's property, other than the impounded funds, and then to apply to such payments such portion or all of said such impounded funds as may be necessary, which said Trustee's Certificates, allowances, obligations, costs and expenses, if any remaining after application of all such funds, shall constitute a first lien upon the said assets and property so turned over to said Reconstruction Finance Corporation; * * *."

Evidence was heard in support of the application for fees of the trustee and his counsel, of attorneys for the petitioning creditors, and of attorneys for the debtor.

■ An examination of the authorities indicates that where the secured creditor is benefited by the proceeding, then it may be required to bear its proper proportion of such expenses. In In re Louisville Storage Company, D.C.W.D.Ky., 21 F.Supp. 897, 899, note this pertinent pronouncement:

"It has always been the rule inherent in general principles of equity that the lien-holder must bear the expense of bankruptcy administration which is solely for his benefit, or to which he consents, or which he causes."

This pronouncement was approved by the Court of Appeals, 6 Cir., 93 F.2d 1008, 1009. In Re Sheridan View Bldg. Corporation, 154 F.2d 1008, the Court of Appeals for the Seventh Circuit approved the following doctrine:

" 'We are forced to conclude in view of such authorities that a court is without right to allow fees or expenses *except where they have been earned or incurred in connection with the formation of a plan of reorganization which has been, theoretically at least, of benefit to all parties in interest.'* " (Emphasis mine.)

See also In re Forty-One Thirty-Six Wilcox Bldg. Corp., 7 Cir., 100 F.2d 588.

■ Quite clearly the claimants are within the ambit or compass of this pronouncement. However, it seems desirable and proper, under the circumstances, to limit the compensation of counsel, though the evidence showed that such services were reasonably worth more. This action seems proper because available cash is limited and the sale of mortgaged property

should be avoided. Accordingly, the following will be allowed:

The trustee, $5,500 and expenses

Attorney for trustee, $5,000 and expenses

Attorneys for petitioning creditors, $1,500 and $100 expenses

Attorneys for debtor, $1,500.